David SAMARIPAS, Jr., Appellant

v.

The STATE of Texas.

No. PD–135–13.

Court of Criminal Appeals of Texas.

Oct. 15, 2014.

Rehearing Denied March 18, 2015.

Richard E. Wetzel, Austin, TX, for Appellant.

Jeffrey S. Garon, Assistant District Attorney, Bryan, TX, Lisa C. McMinn, State's Attorney, Austin, TX, for The State.

## OPINION

MEYERS, J., delivered the opinion of the Court in which JOHNSON, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined.

A jury convicted Appellant, David Samaripas, Jr., of engaging in organized

criminal activity [1] and sentenced him, as a habitual criminal, to 53 years in the Texas Department of Criminal Justice–Correctional Institutions Division, an enhanced punishment based on two alleged prior convictions. Appellant appealed, arguing that the trial court improperly sustained the State's objection to Appellant's questions during voir dire. The court of appeals concluded that Appellant failed to preserve error. *Samaripas v. State*, 446 S.W.3d 1, 8–10 (Tex.App.-Corpus Christi 2013, pet. granted).

We granted review to address the following two questions raised by Appellant: (1) In order to preserve error relative to a limitation on voir dire examination of a prospective juror, must a defendant object after the trial court sustains the State's objection to a proposed question? (2) May a non-aggravated state-jail felony conviction, previously punished under the range for a second-degree felony, be used for the purpose of enhancing punishment to that of a habitual criminal under Texas Penal Code Section 12.42(d)? [2]

We hold that error was preserved and that the court of appeals failed to apply the correct, particularized standard regarding preservation of error during voir dire. We further hold that, under Sections 12.42(d) and (e) of the Texas Penal Code as it was worded at the time of Appellant's offense in the present case, the non-aggravated state-jail felony conviction that was punished as a second-degree felony was properly used for subsequent habitual-criminal punishment enhancement. We will reverse and remand to the court of appeals for consideration of the merits of the first issue.

## FACTS AND PROCEDURAL HISTORY

Appellant was a member of the Latin Kings gang. Due to recent gang activity, officers were patrolling a known gang area when they heard gunshots. When they reached the house where the shots had been fired, the resident described the car from which the shots had come and told the officers which direction the car had gone. The officers saw a car matching the description and attempted to stop the car. The driver did not stop, and a high-speed chase ensued. During the pursuit, officers saw something being thrown out of the front passenger window. The car eventually came to a stop when the driver ran over "stop sticks" that had been placed on the highway by the police. Appellant was the front-seat passenger of the car. Officers retrieved the item that had been thrown out of the car and found that it was a colostomy bag containing a nine-millimeter handgun, three magazines, a cell phone, and two quarters. Lab tests indicated that the cartridge cases found at the scene of the shooting had been ejected from the handgun found in the colostomy bag. Officers determined that the house where the drive-by shooting occurred belonged to members of the Latin Kings's rival gang, the Surenos, and that Appellant had to use a colostomy bag due to a gunshot injury he had suffered during a gang fight between the Latin Kings and the Surenos the previous month.

The jury found Appellant guilty of engaging in organized criminal activity and determined that he had used or exhibited a deadly weapon during its commission. In

1. *See* Tex. Pen.Code § 71.02. The jury found that Appellant committed the underlying offense of deadly conduct with the intent to establish, maintain, or participate as a member of a criminal street gang.

2. Unless otherwise noted, all references to Sections refer to the Texas Penal Code.

the sentencing phase, the State submitted two prior convictions for enhancement purposes. Appellant pled true to the prior conviction of assault of a public servant, but objected to the second offense, which was a state-jail felony for evading arrest, punished as a second-degree felony due to two prior enhancements. Finding both enhancement paragraphs true, the jury sentenced Appellant as a habitual criminal to 53 years' imprisonment.

Appellant appealed the decision, claiming that the evidence was insufficient, that the trial court abused its discretion in limiting his voir dire examination, that the trial court erred in instructing the jury on the law of parties, and that his sentence was improperly enhanced. The court of appeals affirmed Appellant's conviction and sentence. Appellant filed a petition for discretionary review, asking us to consider whether the court of appeals erred in holding that he failed to preserve the voir dire error and whether his prior state-jail felony conviction could be used for sentence enhancement.

## PRESERVATION OF ERROR DURING VOIR DIRE

### Issue Background

On appeal, Appellant argued that the trial court abused its discretion by improperly limiting his voir dire examination of a prospective juror. At issue was the question: "What type of evidence would you expect to hear? What type of evidence do you expect the State of Texas to bring you, Ms. O'Neal, in an effort to prove to you beyond a reasonable doubt that someone committed an offense?" The State objected to it as an improper commitment question, and after a brief discussion at the bench, the trial court sustained the objection.

Just before Appellant's counsel posed the question at issue on appeal, the following exchange occurred:

DEFENSE: [Directed at Ms. Davis] In that class three years ago, you probably learned there's no definition provided by the court to "beyond a reasonable doubt"; is that right?

MS. DAVIS: Right. We had a long discussion about it.

DEFENSE: And did that make sense to you?

MS. DAVIS: It can be fuzzy.

DEFENSE: It can be fuzzy. In order to convince somebody beyond a reasonable doubt—I'll come back to you, Ms. O'Neal. What type of evidence would you expect the State of Texas to bring to you in order to convince you that somebody committed an offense beyond a reasonable doubt?

The State objected to this question, and the trial court called the parties to the bench.

COURT: I think he is entitled to say what is your understanding of reasonable doubt, as long as he doesn't give them a definition they have to adhere to.

STATE: But if he's saying what [evidence] do you need for you to get to guilty?

The trial court sustained the objection, and Appellant's counsel rephrased with the question that was at issue on direct appeal:

DEFENSE: What type of evidence would you expect to hear? What type of evidence do you expect the State of Texas to bring you, Ms. O'Neal, in an effort to prove to you beyond a reasonable doubt that someone committed an offense?

Again, the State objected and the parties were called to the bench.

STATE: Same question: "What do you expect?"

COURT: You're going to bind them to a certain level of evidence.

DEFENSE: Just asking them what do they expect the State of Texas to bring them evidence wise.

COURT: I don't have a problem with that question. Ask it that way. Sustained.

STATE: But to prove somebody guilty at that point in time, that's why.

COURT: I can't let them get committed to a certain proof in order to find somebody.

DEFENSE: I'm understanding that.

COURT: I sustain the objection.

[End of bench conference.]

DEFENSE: In a criminal case, Ms. O'Neal, what type of evidence would you expect to hear period?

MS. O'NEAL: Factual.

DEFENSE: Factual evidence. What type of factual evidence, Ms. Gallagher?

MS. GALLAGHER: Good. Well, maybe some eyewitnesses.

DEFENSE: Eyewitnesses. Okay, what else? Now, we're talking about engaging in organized criminal activity deadly conduct charge. What are you expecting?

MR. GRAUKE: Physical evidence.

DEFENSE: Physical evidence. Number 23, what type of evidence would you expect?

MR. GRAUKE: Gun.

DEFENSE: A gun. Okay.

MR. GRAUKE: If that was the case.

DEFENSE: What else? What other type of evidence could we have, factual physical evidence? A gun. What else might you expect?

VENIREPERSON: Eyewitness.

VENIREPERSON: Expert testimony.

DEFENSE: Expert testimony. On what?

STATE: Judge, I'm sorry. We're going back to the same thing. Essentially saying here's what we need to prove to get to beyond a reasonable doubt.

DEFENSE: That's not my question, Judge.

COURT: Come up here again.

[At the bench, on the record.]

STATE: I keep objecting because he's trying the same exact. He's saying what kind of evidence, factual evidence—

COURT: Make clear to them in your question that your question is predicated that there're many different kinds of evidence some of it which you can hear, some of which you cannot hear. In other words, what you're doing now, again, is binding them to hear certain evidence before they can say guilty.

DEFENSE: I respectfully disagree, your Honor. I'm just asking them their expectations for trial.

COURT: Well, phrase it clearly that these may or may not be necessary to find reasonable doubt, please.

DEFENSE: Yes, sir.

COURT: Then you can ask it.

[End of bench conference.]

DEFENSE: Understanding that these items of evidence that we're talking about here may or may not create reasonable doubt, may or may not convince you beyond a reasonable doubt—okay, we talked about physical evidence; we talked about guns; we talked about—we were at expert testimony. Who said that?

In addressing preservation of error *sua sponte*, the court of appeals assumed, with-

out deciding, that Appellant's question was proper and that its prohibition constituted an abuse of discretion. *Samaripas*, 446 S.W.3d at 9. The court of appeals then applied general error-preservation standards, stating that Appellant failed to object to the trial court's ruling, complied with the ruling, rephrased his questions, and neither discussed nor challenged the ruling's effect on the scope of voir dire. *Id.*, 446 S.W.3d at 9-10. Accordingly, the court of appeals held that Appellant failed to preserve the issue for review. *Id.*, 446 S.W.3d at 9.

### Arguments of the Parties

Appellant argues that the preservation-of-error ruling by the court of appeals does not comport with prevailing precedent established by this Court. He identifies *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex. Crim.App.1991), and *Campbell v. State*, 685 S.W.2d 23, 25 (Tex.Crim.App.1985), as enunciating unique error-preservation standards in the context of voir dire.

Appellant contends that, because the court of appeals assumed an abuse of discretion by the trial court, if this Court holds that error was preserved, then the only remaining issue to be decided on remand is whether disallowing the question was harmful.

The State says that the court of appeals properly "reviewed the context of the discussions to determine whether the issues about commitment and expectations of the evidence implicated any concern about limiting the scope of Appellant's voir dire."

The State argues that unique error-preservation standards do not apply in the present case. In support of this assertion, it distinguishes our holding in *Campbell* as controlling only circumstances in which the trial court has made a solitary ruling to disallow a question. The State also asserts that the trial court's explanation of its rationale for sustaining the commitment

objection is significant. It argues that, after the trial court explained its ruling, Appellant had to identify some concern that being required to rephrase his question would pose an unconstitutional limitation on the scope of his voir dire. Instead, according to the State, Appellant complied with the order and rephrased the question.

Finally, the State contends that Appellant's claim on appeal did not comport with the issue at trial—"none of Appellant's complaints here informed the trial court that its ruling risked limiting the scope of voir dire or prevented the exercise of intelligent strikes."

### Analysis

A trial court has broad discretion over the voir dire process, including setting reasonable limits and determining the propriety of a particular question. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim. App.2002). We stated that "A trial court's discretion is abused only when a proper question about a proper area of inquiry is prohibited. A question is proper if it seeks to discover a juror's views on an issue applicable to the case." *Id.* (citations omitted).

Appellate courts apply unique standards with respect to preservation of error during voir dire. If a party asks a proper question of the venire, the other party objects, and the court sustains the objection, then error is preserved. *Campbell*, 685 S.W.2d at 25. "Appellant asked the question, and the State objected to the question. The trial court sustained the objection. Appellant was thus prevented, by a ruling of the court, from asking a proper voir dire question of the jury panel. The error was preserved for review." *Id.* Appellant was not required to further develop or exhaust the subject at issue by engaging in further questioning. *Id.* at 26. *See also Nunfio v. State*, 808 S.W.2d at

484, *overruled on other grounds in Barajas,* 93 S.W.3d at 40, *and Gonzales v. State,* 994 S.W.2d 170, 172 (Tex.Crim.App. 1999). The State mischaracterizes our holding in *Campbell* as determining that error is preserved in such circumstances only when the court has made a solitary ruling to disallow a proffered question. We stated in *Campbell* that further questioning or development of the subject at issue is not required to preserve error. 685 S.W.2d at 26. However, it does not follow that engaging in further questioning or development causes error to be forfeited.

The State also argues that Appellant did not alert the trial court that the ruling improperly limited the scope of voir dire or impacted his ability to intelligently exercise his peremptory strikes. He was not required to. As we stated in *Nunfio,* "Once appellant posed the specific question he sought to ask the venire and the judge refused to allow the question, the ruling by the trial court amounted to a direct order not to ask the question. Appellant obtained a specific ruling as to a specific question and properly preserved the issue for review." 808 S.W.2d at 484.

The court of appeals erroneously applied general standards of preservation of error in evaluating Appellant's issue. *Samaripas,* 446 S.W.3d at 9 (citing Tex.R.App. P. 33.1(a); Tex.R. Evid. 103(a)(1); *Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex.Crim. App.2004)). Under the proper standard, however, the court of appeals's own recounting of the circumstances would have been sufficient to show that the error was preserved: "During voir dire, defense counsel asked a veniremember [a question.] ... The State objected to the ques-

tion as an improper commitment question, and the trial court sustained the objection." *Samaripas,* 446 S.W.3d at 8

We remand to the court of appeals to determine whether the trial court abused its discretion by prohibiting defense counsel from asking a proper question about a proper area of inquiry and if so, whether appellant was harmed by the trial court's error.

## SENTENCE ENHANCEMENT

### *Issue Background*

Appellant's primary conviction, engaging in organized criminal activity, was based on the underlying offense of deadly conduct, a third-degree felony offense. TEX. PEN.CODE § 71.02(a)(1); TEX. PEN.CODE § 22.05(e). Engaging in organized criminal activity elevated the offense to a second-degree felony. TEX. PEN.CODE § 71.02(b). For further punishment enhancement as a habitual offender under Penal Code Section 12.42(d), the State alleged two prior felony convictions, the second of which was for evading arrest with a motor vehicle, a state-jail felony under Penal Code Section 38.04(b)(1). Appellant's punishment for evading arrest with a motor vehicle had itself been enhanced to that of a second-degree felony under Section 12.42(a).[3]

At the time of Appellant's offense in the present case, relevant provisions of the habitual offender statute, Section 12.42, read as follows:

(d) .... [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses,

---

**3.** As provided by former Texas Penal Code 12.42(a)(2), two previous felony convictions were shown for punishment enhancement of Appellant's conviction for evading arrest with a motor vehicle. Effective September 1, 2011, Section 12.42(a) was amended by Act of May 25, 2011, 82nd Leg., R.S., ch. 834 § 2, 2011 Tex. Gen. Laws 834.

and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

(e) A previous conviction for a state jail felony *punished* under Section 12.35(a) may not be used for enhancement purposes under Subsection (b), (c), or (d).[4] (Emphasis added).

Appellant argued on appeal that, contrary to the proscription in Section 12.42(e), his sentence had been unlawfully enhanced under Section 12.42(d) with a state-jail felony conviction—evading arrest with a motor vehicle. He maintained that, although the punishment for that offense had been enhanced, that did not enhance the level of the underlying offense and, therefore, it should be excluded from use for punishment enhancement of his current offense.

The court of appeals agreed with the State's position that Section 12.42(e) is unambiguous in its plain-text reading: Only prior state-jail felony convictions actually punished under Section 12.35(a) are prohibited from being used for enhancement. Appellant's prior conviction was punished under Section 12.42(a)(2). According to the statute's plain meaning, the court concluded, Section 12.42(e) is inapplicable in this case. *See Samaripas*, 446 S.W.3d at 13.

The court stated that such a construction of the statute did not create an absurd result, given the legitimate legislative goal of "[p]unishing a defendant more severely after repeated behavior that has escalated beyond the level of an unenhanced state jail felony offense." *Id.*, 446 S.W.3d at 13.

### Arguments of the Parties

Appellant argues now, as he did on appeal, that our decision in *Ford v. State*, 334 S.W.3d 230 (Tex.Crim.App.2011), bars the use of his prior state-jail felony conviction for enhancement purposes.

The State argues that the plain meaning of the statute authorizes the use of both prior convictions for habitual-criminal enhancement.

### Analysis

In *Ford*, we considered whether the sex-offender-registration statute allowed prior offenses to increase the level of punishment or the level of the offense. We stated that because the registration statute referred to "punishment," it operates, as does Section 12.42, by increasing only the level of punishment that applied to the primary offense. We held that, while the punishment level may be increased to the range of the next highest felony, the level of the offense was not increased. *Id.* at 235. We agree with the holding in *Ford* in that Appellant's prior state-jail felony was not increased to a higher offense. However, at the time of

---

4. Effective September 1, 2011, Sections 12.42(d) and (e) were amended by Act of May 25, 2011, 82nd Leg., R.S., ch. 834 §§ 4, 6, 2011 Tex. Gen. Laws 834. The Legislature repealed Section 12.42(e), incorporating its language into Section 12.42(d), except using the word "punishable" rather than "punished." Section 12.42(d) now reads, "A previous conviction for a state jail felony *punishable* under Section 12.35(a) may not be used for enhancement purposes under this subsection." (Emphasis added). The bill analysis

characterized the change as "nonsubstantive." and stated that, "[L]egislation is needed to clarify the meaning [of the repeat and habitual felony offender] provisions and to specify that the felonies do not include state jail offenses that are not aggravated. H.B. 3384 seeks to remain true to the intent of the legislature when it created the lower-level category of state felony offenses and to retain the special treatment given to state jail offenses punishable as aggravated state jail felonies."

Appellant's current offense, Section 12.42(e) prohibited only state-jail felonies that had not been previously enhanced from being used for habitual-offender status. Prior to September 1, 2011, Section 12.42(e) stated that, "A previous conviction for a state jail felony punished under Section 12.35(a) may not be used for enhancement purposes under Subsection (b), (c), or (d)."[5] We agree with the court of appeals that the plain language of the statute makes it clear that, at the time of Appellant's offense, Section 12.42(e) focused on how the previous state-jail felony was actually punished and precluded from use for enhancement only those state-jail felonies that had not been punished under the range of a higher felony. Here, Appellant was not punished under Section 12.35(a). His prior state-jail felony had been enhanced, and he was punished for that offense under Section 12.42(a)(2). Therefore, the prior offense was properly used for enhancement purposes, and the court of appeals did not err in overruling this issue.

## CONCLUSION

The judgment of the court of appeals is affirmed on the second issue. We reverse the judgment of the court of appeals on the first issue and remand the case for consideration of the first issue on the merits.

KELLER, P.J., filed a dissenting opinion in which PRICE, J., joined. WOMACK, J., concurred.

KELLER, P.J., filed a dissenting opinion in which PRICE, J., joined.

I disagree with the Court's conclusion that appellant's prior state-jail felony conviction can be used to enhance his punishment under § 12.42(d). The court says that the language of the statute is plain, but I think that the language is ambiguous and that extratextual factors resolve that ambiguity in appellant's favor.

### A. The Issue

One of the two felonies used by the State as a prior conviction for enhancement purposes under § 12.42(d) was a state jail felony under § 12.35(a). The punishment for this state jail felony had been enhanced to that of a second-degree felony under former § 12.42(a)(2).[1] Appellant contends that, even though punishment was enhanced to that of a second-degree felony, the offense itself was still a state jail felony offense for the purpose of determining whether it could be used for enhancement. He further contends that the applicable statute—former § 12.42(e)—prohibited using a § 12.35(a) state jail felony offense for enhancement under § 12.42(d). The State, the court of appeals, and now this Court contend that § 12.42(e) did not prohibit using appel-

5. Effective September 1, 2011, Section 12.42(e) was repealed and the following language was added to subsection (d): "A previous conviction for a state jail felony punishable under Section 12.35(a) may not be used for enhancement purposes under this subsection." Under this language, a state-jail felony, even if it has been enhanced, cannot be used to enhance a subsequent felony offense. The distinction between the former "punished under Section 12.35(a)" language and the current "punishable under Section 12.35(a)" is significant here because Appellant was not

punished under Section 12.35(a) but his prior offense was *punishable* under that section. Had he committed the current offense after this amendment, it would not have been proper for his prior state-jail felony to be used for enhancement.

1. *See* TEX. PENAL CODE § 12.42(a)(2) (West 2008) (allowing punishment for a state jail felony under § 12.35(a) to be enhanced to a second-degree felony if defendant had two prior, sequential state jail felony convictions).

lant's state jail felony offense because § 12.42(e) prohibited only the use of an offense that was "punished" under § 12.35(a) and appellant's offense was "punished"—via enhancement—under § 12.42(a)(2).[2]

## B. Standards

We construe a statute in accordance with its literal text unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended.[3] If, however, the language is ambiguous, or leads to absurd results, then we can examine extra-textual factors in construing the meaning of the text.[4] Statutory language is ambiguous if it "is reasonably susceptible to more than one understanding."[5] Extra-textual factors that may be examined include, but are not limited to, the object sought to be attained, the legislative history, prior statutory provisions, and the consequences of a particular construction.[6]

## C. Ambiguity

Appellant committed the current offense in October of 2007. At that time, § 12.42(e) provided:

A previous conviction for a state jail felony punished under Section 12.35(a) may not be used for enhancement purposes under Subsection (b), (c), or (d).[7]

The question here is: What does it mean for an offense to be "punished under Section 12.35(a)"? One possible construction of that phrase is the construction advocated by the State—that an offense is "punished" under § 12.35(a) only if the punishment is not enhanced under some other provision. If this construction is correct, then enhancement of appellant's prior state jail felony under § 12.42(a)(2) would mean that he was punished under that section instead of under § 12.35(a).

But there is another possible construction of § 12.42(e). The statute that sets forth the initial punishment for state jail felonies— § 12.35—creates a two-tiered system. The first tier is a plain-vanilla state jail felony, punished under § 12.35(a):

Except as provided by Subsection (c), an individual adjudged guilty of a state jail felony shall be *punished* by confinement in a state jail for any term of not more than two years or less than 180 days.[8]

The second tier is an aggravated state jail felony, punished under § 12.35(c):

An individual adjudged guilty of a state jail felony shall be *punished* for a third degree felony . . .

if certain facts are proven at trial.[9] Notice that § 12.35(a) refers *only* to subsection (c); it does *not* say "Except as provided by Subsection (c) or any other statute" or "Except as provided by Subsection (c) or § 12.42." In isolation, § 12.35 indicates that there are only two ways in which state jail felonies may be punished: under § 12.35(a) or under § 12.35(c). At the time applicant committed his prior state jail felony offense (and even at the time his current offense was committed), the legis-

---

**2.** *See Samaripas v. State,* 446 S.W.3d at 13 (Tex.App.-Corpus Christi–Edinburg 2013).

**3.** *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

**4.** *Id.*

**5.** *Baird v. State,* 398 S.W.3d 220, 229 (Tex. Crim.App.2013).

**6.** *Ex parte Rieck,* 144 S.W.3d 510, 512 (Tex. Crim.App.2004).

**7.** Tex. Penal Code § 12.42(e) (West 2008).

**8.** *Id.* § 12.35(a) (emphasis added).

**9.** *Id.* § 12.35(c) (emphasis added).

lature had also chosen to provide enhanced penalties in § 12.42 for some state jail felony offenders, even when the offense had not been aggravated under § 12.35(c).[10] Obviously, these enhanced penalties could be imposed in appropriate cases despite the apparent exclusivity of the language of § 12.35(a).

But the language of § 12.35 suggests that a state jail felon is punished as an initial matter under this two-tiered system, with the exclusive options being punishment as a § 12.35(a) offense or punishment as a § 12.35(c) offense. The language in § 12.42(e) could be read as following this convention, so that a state jail felon is considered punished under either § 12.35(a) or § 12.35(c), though other provisions may then allow punishment to be enhanced. If that construction of § 12.42(e) is correct, then appellant was punished under § 12.35(a), though his punishment was enhanced under § 12.42(a)(2). Because he was punished under § 12.35(a), rather than § 12.35(c), his prior state jail felony conviction would not be available for enhancement under § 12.42(d). This construction would give effect to the two-tiered structure of § 12.35 and assume that the legislature understood this two-tiered structure when it drafted § 12.42(e).

So, the text of § 12.42(e) is reasonably susceptible to two constructions: (1) the State's construction, which says that a person is punished under § 12.35(a) only if his punishment is not enhanced under any other provision, and (2) the two-tiered construction, which says that a person is punished under § 12.35(a) if he is not punished under § 12.35(c). Consequently,

§ 12.42(e) is ambiguous, and it is appropriate to examine the legislative history.

### D. Extratextual Factors

When § 12.42(e) was first enacted in 1994, it provided unambiguously that only aggravated state jail felonies, under § 12.35(c), could be used for enhancement under § 12.42:

A previous conviction for a state jail felony may be used for enhancement purposes under this section only if the defendant was *punished* for the offense under Section 12.35(c).[11]

From this language, two things become apparent. First, the legislature initially had a two-tiered approach to using § 12.35 convictions under § 12.42: § 12.35(c) convictions could be used, but § 12.35(a) convictions could not. Second, the 1994 version of the statute used the word "punished." As I will explain below, these two observations support employing the "two-tiered" construction in appellant's case.

Let's begin with the first observation: In 1994, the legislature had a two-tiered approach to the use of state jail felony convictions under § 12.42: § 12.35(c) convictions could be used, but § 12.35(a) convictions could not. Effective January 1, 1996, § 12.42(e) was changed to reflect the version applicable in appellant's case.[12] Along with this change to § 12.42(e), the legislature changed § 12.42(a) to allow state jail felony convictions under § 12.35(a) to be used to enhance other state jail felony convictions.[13] The bill analysis for the 1996 amendment states that "[t]he current requirement that only state jail felony convictions for which the

---

10. *Id.* § 12.42(a)(1)–(3).

11. Tex. Penal Code § 12.42(e) (West 1994) (emphasis added).

12. Tex. Penal Code § 12.42(e) (West 1996) (Text of subsec. (e) effective January 1, 1996).

13. *Id.* § 12.42(a).

punishment was enhanced to a third degree felony could be used for enhancement purposes would be changed so that state jail felony convictions that were not enhanced could be used in some situations to enhance later *state jail felony* convictions."[14] This statement indicates that the legislature wanted to change the absolute rule that only state jail convictions under § 12.35(c) could be used for enhancement to allow § 12.35(a) convictions to sometimes be used for enhancement. But the contemplated exception was a narrow one: it allowed a § 12.35(a) conviction to be used only to enhance another state jail felony. This passage suggests that the legislature never contemplated that § 12.35(a) convictions would be used to enhance non-state-jail felonies under § 12.42(d).

I turn now to the second observation about the 1994 version of § 12.42(e): that version of the statute, like the version applicable to appellant, contains the word "punished." So, what would happen if we applied the State's approach to the 1994 statute? As we shall see, the State's analysis unravels. To understand why this is so, we need to look at another aspect of § 12.42 as it existed in 1994. In addition to allowing § 12.35(c) offenses to be used as prior convictions for enhancement purposes, the 1994 amendments to § 12.42 allowed § 12.35(c) offenses to be primary offenses subject to punishment enhancement by prior convictions under § 12.42(a).[15] A § 12.35(c) offense was treated exactly like a third-degree felony in this regard.[16]

If a defendant repeatedly committed third-degree felonies, the following could occur, under any version of § 12.42, from 1994 onward, assuming the felonies were in proper sequence: The first third-degree felony conviction would subject the defendant to the 2–to–10 year sentencing range that applies to third-degree felonies.[17] If the State availed itself of § 12.42(a), the second third-degree felony conviction would subject the defendant to the 2–to–20 year sentencing range for a second-degree felony.[18] If the State availed itself of the most serious available enhancement on the next conviction, the defendant's third conviction for a third-degree felony would subject him to the 25–to–99–years–or–life sentencing range under § 12.42(d).[19]

But the State's proposed construction of the word "punished" would disrupt the way § 12.35(c) felonies were treated in 1994. Let's change the above hypothetical of a defendant who repeatedly commits third-degree felonies so that his second felony is a § 12.35(c) felony. The § 12.35(c) felony could be enhanced by the prior third-degree felony under § 12.42(a) so that the offender would be subject to a second-degree punishment range.[20] So far, so good. Could the State later, under § 12.42(d), use the defendant's two prior felony convictions to enhance the defendant's third felony conviction (as it could in the above hypothetical)? Not if the State's construction is correct, because the § 12.35(c) conviction that was enhanced under § 12.42(a) would have been "punished" under § 12.42(a) rather than § 12.35(c). Since the 1994 version of

---

14. House Research Organization, Bill Analysis, CSSB 15, 74th Leg., R.S. (May 22, 1995) (emphasis added).

15. Tex. Penal Code § 12.42(a) (1994).

16. *Id.*

17. Tex. Penal Code § 12.34(a).

18. *Id.* § 12.42(a); § 12.33(a).

19. *Id.* § 12.42(d).

20. Tex Penal Code § 12.42(a) (West 1994).

§ 12.42(e) says that only convictions that are "punished" under § 12.35(c) can be used, the § 12.35(c) conviction that was enhanced under § 12.42(a) could *not* be used.

But if the State refrained from availing itself of the second-degree felony punishment for the § 12.35(c) conviction, then the § 12.35(c) conviction would unquestionably be available later for enhancement purposes under § 12.42(d).[21] In essence, under the State's construction, if the State enhances a § 12.35(c) offense under § 12.42, it loses the ability to use the § 12.35(c) offense for enhancement purposes at a later date. No other felony is treated this way under § 12.42 and there is no good reason to think that the legislature intended to treat § 12.35(c) offenses in such an anomalous manner.

The Court also notes that the legislature amended § 12.42(e) to replace the word "punished" with the word "punishable."[22] The bill analysis to this amendment characterized the change as nonsubstantive and intended only to clarify the law.[23] Although this Court gives little weight to subsequent enactments in interpreting prior law, the legislative pronouncement of this change as nonsubstantive is some additional support for the conclusion that the legislature never intended for § 12.35(a) offenses that were enhanced under § 12.42

to be available for enhancement under § 12.42(d).[24]

Finally, as the following example will show, the State's construction of the statute would essentially allow "double-dipping"—the use of § 12.42 two times in a single enhancement—first to bump up the plain-vanilla state jail felony to make it eligible for use as a prior conviction for enhancement purposes and a second time to actually use the bumped-up state jail felony for enhancement purposes. That is not how § 12.42 has ever operated for any other felonies.

For example, suppose a defendant was convicted of two third-degree felonies at the same time and later committed another third-degree felony after the first two convictions were final. Due to sequencing requirements, only one of the prior convictions could be used to enhance the later third-degree felony to second-degree punishment.[25] If the fact that the new offense is now punished as a second-degree felony could be a further basis for enhancement under § 12.42, the State could theoretically use the unused prior third-degree felony conviction to further enhance the defendant to a first-degree felony.[26] But such a result is not allowed because a § 12.42 enhancement changes only the punishment, not the degree of the original of-

---

**21.** *Id.* § 12.42(e).

**22.** And the passage was moved into § 12.42(d). *See* Acts 2011, 82nd Leg., R.S., ch. 834 §§ 4, 6.

**23.** Senate Research Center, Bill Analysis, H.B. 3384, 82nd Leg., R.S., *Author's/Sponsor's Statement of Intent*, 2nd paragraph & *Section–by–Section Analysis*, § 4 (May 19, 2011).

**24.** *See Ex parte Ervin*, 991 S.W.2d 804, 816 (Tex.Crim.App.1999) ("Although we have held that subsequent enactments by the Legislature may be some evidence of their intent in a prior version of the statute, we nevertheless give little weight to those subsequent enactments in interpreting the prior law." *Comparing Brown v. State*, 943 S.W.2d 35, 40 (Tex.Crim.App.1997) (finding later version of statute relevant to interpreting earlier version, combined with a number of other factors) *with Ex parte Schroeter*, 958 S.W.2d 811, 813 (Tex.Crim.App.1997) (rejecting Legislature's attempt to interpret prior law in subsequent legislation)).

**25.** Tex. Penal Code § 12.42(a).

**26.** Tex. Penal Code § 12.42(b).

fense,[27] so a § 12.42 enhancement of a conviction has no effect on how that conviction can itself be used for enhancement purposes. Under the State's construction, however, a § 12.42 enhancement does affect the usability of a state jail felony conviction. The fact that such a construction is simply out of step with how we treat other felonies under § 12.42 is another reason to reject it. I conclude that the extratextual factors favor the "two-tiered" approach to construing § 12.42(e), so that, by "punished," the statute means punished under § 12.35(a) instead of § 12.35(c). Under that construction, appellant's prior conviction was not usable for enhancement purposes.

I respectfully dissent.

**27.** *Ford v. State,* 334 S.W.3d 230, 234–35 (Tex.Crim.App.2011) ("Penal Code § 12.42 increases the range of punishment applicable to the primary offense; it does not increase the severity or grade of the primary offense.").