

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00230-CR

———————————————

CODY NATHANIEL VICE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR23-0258

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Cody Nathaniel Vice appeals his conviction for aggravated assault with a deadly weapon and sentence of 18 years' imprisonment in the Texas Department of Criminal Justice. In his only issue, Vice contends that the trial court abused its discretion during voir dire when it prohibited Vice's trial counsel from asking proper questions of three venirepersons. We affirm.

## I.   THE CHARGE AGAINST APPELLANT

Vice was charged by indictment with the offense of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2). The indictment alleged, in pertinent part, that Vice

> did then and there recklessly cause bodily injury to James Lichthardt by striking a vehicle being driven by the said James Lichthardt with a vehicle being driven at excessive speed by the defendant and the defendant did then and there use or exhibit a deadly weapon, to-wit: an automobile, during the commission of said assault.

Vice pleaded guilty to the charge and requested a jury trial as to punishment. Because Vice's one appellate issue alleges error during the voir dire portion of trial, we will review that portion of the record in our discussion below.

## II.   VOIR DIRE

In his statement of facts, Vice first directs our attention to this exchange during voir dire between the State and Venireperson No. 14:

[PROSECUTOR]: [O]kay, where did you see a high-speed chase?

VENIREPERSON [NO. 14]: In White Settlement actually.

2

[PROSECUTOR]: Oh, my gosh. Where at?

VENIREPERSON [NO. 14]: Cherry Lane going northbound. I got run off the road by it.

[PROSECUTOR]: You got run off the road by a high-speed chase on Cherry?

VENIREPERSON [NO. 14]: Yes.

[PROSECUTOR]: I'm sure you thought that was pretty dangerous. Were you okay?

VENIREPERSON [NO. 14]: I was okay, yes, thank goodness.

[PROSECUTOR]: Well, when you got run off the road, where did you end up?

VENIREPERSON [NO. 14]: I ended up in a parking lot.

[PROSECUTOR]: No damage or anything like that?

VENIREPERSON [NO. 14]: No. Just an alignment. I went up on the curb and -- just trying to get away.

[PROSECUTOR]: Did you get any insurance or anything like that for your car?

VENIREPERSON [NO. 14]: Yes.

[PROSECUTOR]: Well, that's good. But it's a big inconvenience to run off the road in a high-speed chase?

VENIREPERSON [NO. 14]: Yes.

[PROSECUTOR]: Do you feel like your prior experience would impede your ability, stop you from being able to judge a case involving a high-speed chase?

VENIREPERSON [NO. 14]: No.

[PROSECUTOR]: Okay. That sounds good. Thank you, ma'am.

Vice next addresses the following exchange between his trial counsel and the venire:

> Okay. Let's talk about the fair juror, which I told you I dislike this term, but it's used in the Code and so -- and in case law and whatnot, and so we're kind of forced to use it. The judge will kind of explain, can you just follow the law? That also -- no offense to His Honor, but everybody can follow the law. Right?
>
> [Venireperson No. 5], let's pick on you since you and I share a lead foot. And [the prosecutor] also. I grew up and learned to drive in Houston.
>
> Does anybody -- okay, [Venireperson No. 14], I saw that look.
>
> Who here has ever been to Houston? Anybody ever grow up there, live there, anything? What are the drivers like?
>
> VENIREPERSON: Crazy.
>
> . . . .
>
> [DEFENSE COUNSEL]: Right. So if I'm -- is that -- asking me -- if this is a speeding case, I guess I may be kind of not a fair juror. But it doesn't mean I can't follow the law. Right? Like if I'm given a piece of paper and the law says this or whatever, I may not agree with it, and I'm going to voice that opinion. And unless it violates my personal code of ethics, my moral compass, I'm going to try to do what the law says. But that doesn't necessarily mean you're a bad person. Right? So we say can you be fair? Can you follow the law? Yes, of course. You are absolutely fair. It's not a knock on your character. Maybe this isn't the right case for you. You will get called again. We will have another opportunity to have you on a jury. Right?
>
> So y'all yell out -- and I mean yell out the right answer. Okay? Is a fair juror somebody who has a fresh outlook or preconceived notions?
>
> VENIREPANEL: (In unison) Fresh outlook.
>
> [DEFENSE COUNSEL]: You guys got it. Someone who's emotional or rational?

4

VENIREPANEL: (In unison) Rational.

[DEFENSE COUNSEL]: Before we move on, what -- what could cause us to be emotional about a case?

VENIREPERSON: Personal experience.

. . . .

[DEFENSE COUNSEL]: . . . .

And, [Venireperson No. 14], I believe when [the prosecutor] was up here asking questions, you kind of relayed a personal story about -- was it a car crash, car wreck? Do you mind going back over that again?

VENIREPERSON [NO. 14]: I'm sorry. Regarding?

[DEFENSE COUNSEL]: You know, just stuff.

VENIREPERSON [NO. 14]: I mean, I did have a car chase that I was involved in.

[DEFENSE COUNSEL]: You were – that's right. You were run off the road on Cherry?

VENIREPERSON [NO. 14]: Cherry Lane. Fort Worth/White Settlement area.

[DEFENSE COUNSEL]: And that -- you said there was some car damage or no?

VENIREPERSON [NO. 14]: There was alignment issues and a little bit of wheel damage.

[DEFENSE COUNSEL]: Any physical damage to you or anybody else?

VENIREPERSON [NO. 14]: No. Thank goodness. I don't know what the end of the chase resulted in, but . . .

[DEFENSE COUNSEL]: Not for you or anybody else in your car?

5

VENIREPERSON [NO. 14]: No.

[DEFENSE COUNSEL]: Okay. And I imagine adrenaline gets pumping during that, get a little shaky?

VENIREPERSON [NO. 14]: Yes.

[DEFENSE COUNSEL]: Were you the only car on the road?

VENIREPERSON [NO. 14]: No. There were several of us on the road.

[DEFENSE COUNSEL]: Talk to me about the emotions you were feeling as you're veering your car off the road.

VENIREPERSON [NO. 14]: Fear and anxiety and fear for what was happening right in front of me.

[DEFENSE COUNSEL]: Yeah. Adrenaline.

VENIREPERSON [NO. 14]: What's going to happen to the police officer chasing them, and the motorcycle was -- he was running. Yeah, it was fear mostly.

[DEFENSE COUNSEL]: Did you find yourself shaking after that?

VENIREPERSON [NO. 14]: Oh, yeah.

[DEFENSE COUNSEL]: Yeah. And about how long did it take for you to kind of stop shaking or regain normalcy?

VENIREPERSON [NO. 14]: Gosh, probably a couple hours.

[DEFENSE COUNSEL]: Yeah. Yeah, I bet. When was this?

VENIREPERSON [NO. 14]: This was basically five years ago.

[DEFENSE COUNSEL]: Five years, so about 2019 or so?

VENIREPERSON [NO. 14]: Yeah.

[DEFENSE COUNSEL]: Okay. And this was over in the White Settlement area. Is that an area that you worked in or --

VENIREPERSON [NO. 14]: No. My hair stylist is actually over off that.

[DEFENSE COUNSEL]: Have you driven that road since this?

VENIREPERSON [NO. 14]: Yes.

[DEFENSE COUNSEL]: Do you still feel some of those emotions as you're driving back on that road?

VENIREPERSON [NO. 14]: Definitely recollection. It does get me.

[DEFENSE COUNSEL]: Right. I mean, it's a pretty significant memory, right?

VENIREPERSON [NO. 14]: Yeah.

[DEFENSE COUNSEL]: And so that being said, if you're selected as a juror in this case, you know, the judge is going to give you the oath as a jury member. He's going to ask you to render a true and fair verdict. Because of this life experience, because it's still causing you some emotion, whatever that may be as you drive on that road even today, you may hear something similar. Right? Is -- because of that life experience that you had, would that -- does that mean this may not be the right case for you?

VENIREPERSON [NO. 14]: It could possibly.

[DEFENSE COUNSEL]: I mean, I don't see how -- but I -- you know, I think we all as people have these personal experiences, and it forms our character and our personality. Right? And it's kind of hard for me as a person to separate some of these, you know, childhood traumatic, whatever, PTSD-level events from, like, my every day. And I'm not saying that's -- and I certainly don't want to put words in your mouth.

VENIREPERSON [NO. 14]: No, you're not.

7

[DEFENSE COUNSEL]: When you say it could, we need a yes or a no. So is this something that would affect your ability to sit as a fair and impartial juror in this case?

VENIREPERSON [NO. 14]: Yes. I think it would affect me.

[DEFENSE COUNSEL]: I appreciate that. You can sit down. Thanks for your honesty.

So, you know, like [Venireperson No. 14], you know, that's a very hard thing to do is to admit as people that, you know what, hey, maybe this is not -- this is just not right for me. Because when I say, like, so much is at stake, you know, yes, for Cody, absolutely. He absolutely deserves a jury who's not going to be affected by personal experiences or anything like that.

But it's also really important for you. We don't want to put you through that. Right? We don't want you to relive any of that anxiety, panic, fear that [Venireperson No. 14] went through here. Does that make sense?

Does anybody else have an experience like that where it could affect me, but better safe than sorry, we need to talk about it? Front row?

VENIREPERSON [NO. 1]: My husband used to be a police officer, and he was involved in a lot of high-speed chases, so it might. I mean, I was a wife sitting there thinking what's happening right now.

[DEFENSE COUNSEL]: Absolutely. I imagine every time he left that house. Right, Sergeant?

I mean, I've had -- you know, Sergeant Hale over here has tons o[f] stories about, what, your husband just sitting at home. And, I mean, I can't imagine having a spouse that kind of goes out there day in and day out.

VENIREPERSON [NO. 1]: Yes.

[DEFENSE COUNSEL]: So let me ask you, has he relayed any of those stories to you?

8

VENIREPERSON [NO. 1]: Oh, absolutely.

[DEFENSE COUNSEL]: Is that -- you didn't experience this firsthand.

VENIREPERSON [NO. 1]: I didn't.

[DEFENSE COUNSEL]: But hearing those stories, I mean, tell me what kind of emotions that you would be feeling.

VENIREPERSON [NO. 1]: You just think, he's not coming home to my kids. Or when he did come home, well, you might not have. He's not in it anymore, hallelujah, so that was a happy day. Change of professions.

[DEFENSE COUNSEL]: Congratulations.

VENIREPERSON [NO. 1]: Absolutely.

[DEFENSE COUNSEL]: That is -- you know, he's no longer in that situation. Is that something you still think about, though, on a day in and day out basis?

VENIREPERSON [NO. 1]: Yes. Thank goodness that he's not in that position anymore, that he has -- he does not have to do that anymore, yes.

[DEFENSE COUNSEL]: If you're selected as a juror -- I mean, you're Juror Number 1.

VENIREPERSON [NO. 1]: Exactly.

[DEFENSE COUNSEL]: We may as well etch your name in one of these chairs. If you're selected as a juror in this case, the judge is going to give you an oath to render a true and fair verdict according to the law and the facts and all that. Does that experience in your life with your husband, all that, would that mean that this may not be the best case for you?

VENIREPERSON [NO. 1]: Yes, probably.

[DEFENSE COUNSEL]: So the hard question, right, the question I don't really like is, you know, if you're selected as a juror in this case, could you be a fair juror?

VENIREPERSON [NO. 1]: Yes. I think -- I don't know. So say --

[DEFENSE COUNSEL]: Fair answer: "I don't know."

VENIREPERSON [NO. 1]: I don't know because I don't know the facts.

[DEFENSE COUNSEL]: Sure. Well, I mean, right. We've pled guilty to agg assault deadly weapon. We're not allowed to talk about the facts. I bet you can kind of guess what we're getting at based on the questions. But that -- you know, that experience is valid whether you experienced it or your husband experienced it, and I don't – I'm not, you know, shortcutting that at all.

VENIREPERSON [NO. 1]: Right.

[DEFENSE COUNSEL]: But I am kind of curious. Like, in the back of your mind, are you going to say or are you going to be --

VENIREPERSON [NO. 1]: Thinking about the past.

[DEFENSE COUNSEL]: Is that going to affect what verdict you have on punishment to Cody based off of that life experience alone? You know what I mean?

VENIREPERSON [NO. 1]: Yes.

[DEFENSE COUNSEL]: It's hard to say definitely yes. But, you know, like [Venireperson No. 14], she still experiences that same emotion as she's driving down that road.

VENIREPERSON [NO. 1]: Exactly.

[DEFENSE COUNSEL]: That's a really real concrete, like, emotion that she can hold onto and feel. Here, it's a little more abstract, but we still need to know. And it's okay if the answer's yes, and it's okay if the answer is no.

VENIREPERSON [NO. 1]: I would probably not be a fair juror.

[DEFENSE COUNSEL]: Thank you, ma'am. I appreciate your honesty, and Cody appreciated it. Right? That's what this process is here for.

Okay. Anybody else like [Venireperson No. 1]?

At that point, before any of the venire responded, the trial court told counsel to "approach." The following bench conference then transpired:

[DEFENSE COUNSEL]: Time for a break?

THE COURT: I don't want to waste a bunch of time. What you're asking is not the law and not determinative.

[DEFENSE COUNSEL]: She's just identified that she cannot be a fair juror.

THE COURT: Question is whether they can follow the law and the instruction of the Court.

[DEFENSE COUNSEL]: I disagree, Your Honor. If -- the question is can they be a fair and impartial juror, and it is a valid question, and I think I'm allowed to get into it.

THE COURT: What does that mean, "fair"?

[DEFENSE COUNSEL]: Absolutely not.

THE COURT: And asking them if there's -- if that experience affects them, well, sure, it affects them. Everything you experience in life affects you.

[DEFENSE COUNSEL]: Judge, everybody has personal experiences, but to the point where it would make them an unfair juror, I'm absolutely allowed to get into that.

THE COURT: What does that mean?

[DEFENSE COUNSEL]: If they cannot follow the law --

11

THE COURT: That's not what you asked them.

[DEFENSE COUNSEL]: -- or have some outside influence regarding whether it's going to affect their verdict in this case.

THE COURT: Well, that's another question. That's not what you're asking them.

[DEFENSE COUNSEL]: Your Honor, I think she is pretty clearly qualified that she should be struck for cause. No motion has been made at this time, and I think there would be a more appropriate time to talk about that.

THE COURT: If she can be fair, all that led up to that, I don't know what that means.

[DEFENSE COUNSEL]: Judge, if you've got questions about the form of my voir dire, I'll be happy to talk about that, but right now is not the time. I am allowed to get into that topic.

THE COURT: Sure you are.

[DEFENSE COUNSEL]: Thank you.

THE COURT: Whether they can follow the law and the instructions of the Court.

[DEFENSE COUNSEL]: May I continue my voir dire?

THE COURT: All I'm telling you is you can follow the law. Don't want to waste time.

[DEFENSE COUNSEL]: Judge, I have not wasted anybody's time. Everything that I've talked about has gone to strikes for cause.

THE COURT: I'm telling you, I don't want to --

[DEFENSE COUNSEL]: Whether or not the Court likes it, she has demonstrated that she cannot be a fair juror.

THE COURT: That is not the test.

[DEFENSE COUNSEL]: Respectfully, sir, I disagree.

THE COURT: You can ask her the law all you want.

[DEFENSE COUNSEL]: Judge, she has -- I have no more questions for that juror. I think she has demonstrated perfectly fine she cannot be fair, and I'm happy to discuss this with other people.

THE COURT: If you want to do that, you can, but I'm telling you, it's not the legal test. If you want to ask her the legal test, have at it.

[DEFENSE COUNSEL]: It's the same question with [Venireperson No. 14]. Do you agree that [Venireperson No. 14] cannot be fair? She's a spouse.

THE COURT: Let me put it this way, Counsel. Say she's seated on the jury. You think she's just going to go, man, I can't wait for my chance to be unfair? Do you really think that's what she's going to do? Of course not.

[DEFENSE COUNSEL]: I think she's just demonstrated to the Court she cannot.

THE COURT: I'm telling you, you can ask the legal test.

[DEFENSE COUNSEL]: Judge, respectfully, I am.

THE COURT: Keep going.

Vice's trial counsel then resumed his questioning of the panel:

Okay. So, like [Venireperson No. 14], like [Venireperson No. 1], do we have any other personal experiences in our life that may not make this the right case for us?

. . . .

[Venireperson No. 9], how are you?

VENIREPERSON [NO. 9]: Good.

[DEFENSE COUNSEL]: Fantastic. How am I doing?

13

VENIREPERSON [NO. 9]: All right.

[DEFENSE COUNSEL]: Yeah, that's how I feel too. Have you or someone you loved been injured in an accident?

VENIREPERSON [NO. 9]: Not on the streets.

[DEFENSE COUNSEL]: Not on the streets? So not in a vehicle. Can you -- can you tell me what kind of accident you were in? It's okay. Let me preface this. We may be talking about personal experiences. If anybody here is like, I don't want to talk about it in front of -- we can talk about it in private in front of the judge and the attorneys and us. But some of this stuff may be important, and we won't know it's important until we actually talk to you about it. Is that something you want to talk about, or do you want to refrain from sharing it with your 50 new best friends?

VENIREPERSON [NO. 9]: No. I just lost my son in a motorcycle accident, but it was not on the regular roads.

[DEFENSE COUNSEL]: I understand. How long ago was that?

VENIREPERSON [NO. 9]: 14 years ago.

[DEFENSE COUNSEL]: Sorry. Truly. That experience obviously is still very traumatic. Does the existence of that in your background, the fact that it's happened, is that -- would that render you unable to sit as a fair and impartial juror in this case?

VENIREPERSON [NO. 9]: I would like to think it wouldn't because they're totally different.

[DEFENSE COUNSEL]: Yeah, sure.

VENIREPERSON [NO. 9]: But I don't know. Like, I didn't know when you asked me that I would react this way, so I don't know.

[DEFENSE COUNSEL]: No, I -- that's completely fair. And it's impossible, I think, for us to know a hundred percent, right, until we've actually had that experience. Can we talk about it a little more?

VENIREPERSON [NO. 9]: Sure.

[DEFENSE COUNSEL]: Let's say you're called as a juror. I mean, obviously, I'm sure -- well, you tell me. I don't want to put words in your mouth. How often do you think about your son?

VENIREPERSON [NO. 9]: On a daily basis pretty much.

[DEFENSE COUNSEL]: How often during the day?

VENIREPERSON [NO. 9]: Not -- it doesn't consume me, so . . .

[DEFENSE COUNSEL]: Yeah. And it was 14 years ago?

VENIREPERSON [NO. 9]: Uh-huh.

[DEFENSE COUNSEL]: How old was he?

VENIREPERSON [NO. 9]: 13.

[DEFENSE COUNSEL]: The -- if you are selected as a juror in this case, and seeing your reaction now, if you hear evidence of a car wreck, if you hear evidence of injuries, is that going to be something that will bring these -- bring these emotions back up?

VENIREPERSON [NO. 9]: It's possible.

[DEFENSE COUNSEL]: Okay. And because of that possibility, would that render you an unfair juror in your opinion?

VENIREPERSON [NO. 9]: Yeah. I would agree that would -- possibility would make it unfair.

[DEFENSE COUNSEL]: I'm going to ask another question.

VENIREPERSON [NO. 9]: Sure.

[DEFENSE COUNSEL]: Because of that possibility -- because you just said it would make you unfair in that sense, would you be able to follow the law as the judge gives it to you?

VENIREPERSON [NO. 9]: I will be able to follow the law.

[DEFENSE COUNSEL]: I understand that.

15

VENIREPERSON [NO. 9]: I would always follow the law.

THE REPORTER: Did you say you would or wouldn't?

VENIREPERSON [NO. 9]: Would be --

[DEFENSE COUNSEL]: Because we haven't done the charge yet either, so we as lawyers don't exactly know what's going to be in that charge. Okay? And so it's hard for us to play a guessing game too. That's going to be a whole other thing we're going to get into without the jury present. So knowing exactly what this judge is going to give you as a juror, it's really hard for us to say, you know, okay, this is the law, are you going to be able to follow it. Right? I mean, do you happen to know what the law would be that the judge would give you?

VENIREPERSON [NO. 9]: Would I know? No, I wouldn't know.

[DEFENSE COUNSEL]: So is it possible for you to even say that you would always be able to follow the law?

VENIREPERSON [NO. 9]: But I would because that's what you do.

[DEFENSE COUNSEL]: I understand. Thank you, ma'am. I appreciate it.

Vice's trial counsel then moved on to question a different venireperson. Later on, the trial court denied Vice's challenge for cause to Venireperson No. 1. At that point, his trial counsel objected and then used three of his peremptory challenges to strike Venirepersons Nos. 1, 9, and 14. *See* Tex. Code Crim. Proc. Ann. arts. 35.14 ("A peremptory challenge is made to a juror without assigning any reason therefor."), 35.15(b) (allotting peremptory challenges in non-capital felony cases).

## III. DISCUSSION

Vice states his sole appellate issue as follows:

16

In this trial on punishment for assault with a deadly weapon, where the deadly weapon was [Vice's] vehicle that caused severe injuries to a third[ ]party in an accident during a chase by the police, the trial court abused its discretion during voir dire when it prohibited defense counsel from asking proper questions about how [V]enirepersons [Nos. 1, 9, and 14] could still be fair and impartial after they stated during voir dire that they may not be fair due to past personal experiences with high-speed chases or accidents. As a result, defense counsel was forced to use peremptory challenges on all three venirepersons since it was not possible to determine if they could serve impartially or not and the trial court denied defense counsel's challenge for cause as to [Venireperson No. 1].

Vice argues that his questions related to biases based on personal experiences and high-speed chases "went directly" to his for-cause challenge grounds based on the venirepersons' potential bias or prejudice against the applicable law and that the trial court abused its discretion by "shutting down [his] counsel's line of inquiry into whether the three venirepersons could be 'fair' and impartial based upon each of their respective personal experiences with high-speed vehicle chases or accidents."[1] There are at least three problems with Vice's argument.

---

[1]The State notes in its brief that Vice "does not complain about the trial court's denial of his challenge for cause [to Venireperson No. 1] on appeal." Even if Vice intended to raise such a complaint in his appellate issue, he has not preserved it for our review. To preserve error on his challenges for cause, Vice had to "(1) assert a clear and specific challenge for cause, (2) use a peremptory challenge on the complained-of veniremember, (3) exhaust all of his peremptory challenges, (4) request and be denied additional peremptory challenges, and (5) be forced to accept an objectionable juror on the jury." *Cardenas v. State*, 305 S.W.3d 773, 780 (Tex. App.—Fort Worth 2009), *aff'd*, 325 S.W.3d 179 (Tex. Crim. App. 2010); *see also Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016). Here, Vice neither requested additional peremptory challenges nor showed that he was forced to accept an objectionable juror on the jury. Vice has thus forfeited any error from the trial court's denial of his challenge for cause to Venireperson No. 1.

First, we are not convinced that Vice preserved his issue for our review. "If a party asks a proper question of the venire, the other party objects, and the court sustains the objection, then error is preserved." *Samaripas v. State*, 454 S.W.3d 1, 5 (Tex. Crim. App. 2014); *see also Campbell v. State*, 685 S.W.2d 23, 25 (Tex. Crim. App. 1985) ("Appellant asked the question, and the State objected to the question. The trial court sustained the objection. Appellant was thus prevented, by a ruling of the court, from asking a proper voir dire question of the jury panel."). That did not happen here. Even assuming Vice's questions of the venire were proper, the State did not object, and there is no trial court ruling for us to review.

In *Torres v. State*, the appellant complained that the trial court had limited his questioning of the veniremembers about their ability to consider the minimum sentence for his offense by interrupting and correcting—mistakenly—both him and the State during voir dire about the range of punishment for a Class A misdemeanor. No. 02-18-00536-CR, 2020 WL 5242416, at *2–4 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd) (mem. op., not designated for publication). We held that the appellant had not preserved his complaint because he did not object when the trial court corrected the prosecutor or when it corrected defense counsel. *Id.* at *4–5. The appellant had relied on *Samaripas*, but as we pointed out, "[i]n *Samaripas*, the State objected to defense counsel's voir dire question and the trial court sustained the objection." *Id.* at *4 (citing *Samaripas*, 454 S.W.3d at 6). "In *Samaripas*, the record

18

showed both an objection and a ruling." *Id.* Here, just like in *Torres*, "[w]e have neither." *Id.*

Second, and assuming that Vice preserved this issue for our review, the trial court did not "prohibit" Vice's counsel from asking the venire anything. "A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry." *Sells v. State*, 121 S.W.3d 748, 755–56 (Tex. Crim. App. 2003). Vice claims that his counsel's questions went directly to his "challenge for cause grounds pursuant to Texas Code of Criminal Procedure article 35.16(c)(2)," which provides that a challenge for cause may be made by the defense for the reason that a venireperson "has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor." Tex. Code Crim. Proc. Ann. art. 35.16(c)(2). But nowhere in the bench conference—which we have quoted above in its entirety—did the trial court order or instruct—or otherwise pressure—Vice's counsel not to ask the venire a particular question or inquire into a particular subject. If anything, the trial court did the opposite, telling Vice's counsel what the "legal test" was and then inviting him to ask the venire about that test or continue with his same line of questioning.

A trial court "does not abuse its discretion when it requires parties to phrase their questions to glean relevant information." *Barajas v. State*, 93 S.W.3d 36, 40 (Tex. Crim. App. 2002). Because the trial court did not prohibit a proper question

19

about a proper area of inquiry, it did not abuse its discretion. *See id.* at 38–39 ("A trial court's discretion is abused only when a proper question about a proper area of inquiry is prohibited.").

Third and finally, the trial court did not "shut[] down" Vice's trial counsel's line of inquiry into anything. Although the trial court interrupted counsel and held a brief conference at the bench, the very first question Vice's trial counsel asked the venire after the bench conference concluded was substantially similar to—and actually more detailed than—the question he had asked immediately before being called to the bench. Vice has not identified one question that he wanted to ask but was prohibited from asking. "Until the contrary has been made to appear, it will be presumed on appeal that the discretion of the trial court was properly exercised." *Beard v. State*, 385 S.W.2d 855, 856–57 (Tex. Crim. App. 1965). The record does not reflect an abuse of the trial court's discretion. We therefore overrule Vice's one issue.

## IV.    CONCLUSION

Having overruled Vice's only issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 17, 2025