

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00312-CR

CARLOS FIELDS                                                   APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

FROM THE CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1316947D

----------

## MEMORANDUM OPINION[1]

----------

A jury found appellant Carlos Fields guilty of committing aggravated assault with a deadly weapon and assessed his punishment at thirty years' confinement.[2] In two issues, Fields complains that the trial court erred by

---

[1]*See* Tex. R. App. P. 47.4.

[2]Fields punched a city bus driver with his closed left fist while holding a knife in his right hand, and he cursed and threatened the driver during their interaction.

denying his challenges for cause to potential jurors Sheperd and Kendricks. He asserts that Sheperd expressed bias by assuming that Fields must have done something to be arrested, charged, and brought to trial and that Kendricks wanted defense counsel to explain why Fields had been arrested and charged.

Great deference is given to the trial court's discretion during the voir dire process. *Curtis v. State*, 205 S.W.3d 656, 659 (Tex. App.—Fort Worth 2006, pet. ref'd); *see Samaripas v. State*, 454 S.W.3d 1, 5 (Tex. Crim. App. 2014); *see also Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005) (stating that considerable deference is afforded to the trial court in jury selection because it is in the best position to evaluate a prospective juror's demeanor and responses), *cert. denied*, 548 U.S. 926 (2006). We review the entire voir dire to determine if the evidence is sufficient to support the trial court's ruling on a challenge for cause. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011).

A defendant may challenge a potential juror for cause if he is biased or prejudiced against the defendant or the law on which the State or defendant is entitled to rely, and the trial court must excuse the juror if bias or prejudice would impair the juror's ability to carry out his oath and instructions in accordance with the law. *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014); *see* Tex. Code Crim. Proc. Ann. art. 35.16(b)(3), (c)(2) (West 2006). But before a venireperson may be excused for cause on the basis of bias, the law must be explained to him, and he must be asked whether he can follow that law regardless of his personal views. *Gonzales*, 353 S.W.3d at 832; *see also*

2

*Comeaux*, 445 S.W.3d at 749; *Curtis*, 205 S.W.3d at 659.  The proponent of a challenge for cause does not meet his burden of establishing that his challenge is proper until he has shown that the veniremember understood the requirements of the law and could not overcome his prejudice well enough to follow it.  *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009), *cert. denied*, 562 U.S. 850 (2010).  When the record reflects that a veniremember vacillated or equivocated on his ability to follow the law, the reviewing court must defer to the trial court.  *Id.* We will not second-guess the trial court when the prospective jurors are persistently uncertain about their ability to follow the law.  *Russeau*, 171 S.W.3d at 879.

During voir dire, Fields's counsel asked which, if any, of the potential jurors, had tried to identify the defendant upon coming into the courtroom.  This led him to the following dialogue with Sheperd and Kendricks:

> [DEFENSE COUNSEL]:  Yeah, we were introduced, right? And did you ask yourself, I wonder what he did?

> MR. SHEPERD:  Yeah.

> [DEFENSE COUNSEL]:  And when you asked yourself, I wonder what he did, does that mean, when you walked in, if we had a scoreboard -- you know, it's a football game and there's touchdowns above us, how many touchdowns am I already down?

> MR. SHEPERD:  I don't know that you're down any.

> [DEFENSE COUNSEL]:  Well, I need to do something.  I've got to prove he didn't do something, right?

> MR. SHEPERD:  Well, you generally have to do something to be here, whether it's rightfully or wrongfully accused.

3

[DEFENSE COUNSEL]: He wouldn't be here if he hadn't done something, in your eyes, correct?

MR. SHEPERD: Correct.

[DEFENSE COUNSEL]: And so what you're saying is, right now – there's been no evidence. There's been no witnesses. You're not even in the box. But right now, you've already made a decision that he's done something or he wouldn't be here, correct?

MR. SHEPERD: Correct.

[DEFENSE COUNSEL]: So when we get to the whole, are you fair, can you be impartial, all of us want to be polite, but if you and I met last weekend at my wife's high school reunion, you would tell me what? I can't be fair in a criminal case. He probably did something, right? I mean, how do you sit next to a guy who did something wrong, right?

MR. SHEPERD: I understand what you're saying.

[DEFENSE COUNSEL]: Well, what I'm saying is -- you know, this is why it's important. That guy over there Mr. Fields, his life is in my hands. Okay? And that is a heavy burden for me to carry. So I can joke about Lindsay Lohan, I can make all these comments, but the reality is, I've got about an hour for you folks to tell me should you not be a juror in this case. Because I assure you, Mr. Garner?

MR. GARNER: Yes, sir.

[DEFENSE COUNSEL]: You're wanting to get out of here, right? We've all heard it like four times, right? I assure you, Mr. Fields wants out of here more than you. You disagree with that?

MR. GARNER: Do I disagree with that? No.

[DEFENSE COUNSEL]: Yeah. So back to you, Mr. Sheperd. My client's depending on me to have you folks speak up and tell me this case isn't right. I can't be fair. I'm a fair person but, you know, I've already formulated an opinion. He wouldn't be here if he hadn't done something, correct?

4

MR. SHEPERD:  Correct.

[DEFENSE COUNSEL]:  So in this case, what you're really telling us is, we're already starting off with a bias, correct?

MR. SHEPERD:  Yeah.

[DEFENSE COUNSEL]:  And that if you were the juror, you could not be fair because of that?

MR. SHEPERD:  Correct.[3]

[DEFENSE COUNSEL]:  Now, I appreciate your honesty. Thank you.

Assuming that Sheperd's comments represented his personal views, Fields's counsel did not ask Sheperd whether he could follow the law regardless of them. *See Curtis*, 205 S.W.3d at 659.  Instead, he resumed his voir dire, stating:

[DEFENSE COUNSEL]:  Okay.  Back to my high school reunion.  Who agrees with Mr. Sheperd?  Let's see over here.  Let's see some hands.  Mr. -- if you don't raise your hand, I'm going to call on you.  So Mr. Kendricks, my investigator.  How are you?

MR. KENDRICKS:  Fine.  How are you, sir?

[DEFENSE COUNSEL]:  Good.  You and I would hit it off, wouldn't we?

MR. KENDRICKS:  Oh, why not.

[DEFENSE COUNSEL]:  If we met at a reunion, you'd say, hey, you know, I'm an investigator for law enforcement.

---

[3]It is unclear at this point whether Sheperd's replies of "correct" pertained to counsel's characterization of what Fields was depending on as far as having the potential veniremembers speak up and tell him whether they had already formed an opinion or whether he himself had already formed a bias and could not be fair.  His subsequent comment, however, set out below, provides clarification.

MR. KENDRICKS:  Absolutely.

[DEFENSE COUNSEL]:  And then we'd probably go our separate ways, huh?

MR. KENDRICKS:  Maybe.

[DEFENSE COUNSEL]:  Maybe not.  How about you?

THE COURT:  Stand up, Mr. Kendricks, please.

[DEFENSE COUNSEL]:  Yeah, stand up, Mr. Kendricks, so we can hear you from nice and loud.  Am I starting off at zero to zero in the football game?

MR. KENDRICKS:  Oh, absolutely.

[DEFENSE COUNSEL]:  Absolutely.  Going to hold them to their burden?

MR. KENDRICKS:  Yes.

[DEFENSE COUNSEL]:  You weren't wondering when you walked in, I wonder what he did?

MR. KENDRICKS:  A little bit.

[DEFENSE COUNSEL]:  A little bit.

MR. KENDRICKS:  Yeah.

[DEFENSE COUNSEL]:  Be honest.

MR. KENDRICKS:  I know he did something that he got charged for.  Whether or not he's guilty or not, no.

[DEFENSE COUNSEL]:  But you were thinking he must have done something or he wouldn't be here.

MR. KENDRICKS:  Something he got arrested for.

[DEFENSE COUNSEL]:  Now, is that enough to create a bias with you?

6

MR. KENDRICKS:  Not always.

[DEFENSE COUNSEL]:  Not always?

MR. KENDRICKS:  No, not always.

[DEFENSE COUNSEL]:  Well, which -- yeah, yeah.  Shoot.

MR. KENDRICKS:  Well, there could be some circumstance on how he got in that situation.

[DEFENSE COUNSEL]:  Okay.

MR. KENDRICKS:  I'm curious to know what the circumstances are.

[DEFENSE COUNSEL]:  You want me to prove something?

MR. KENDRICKS:  Yes.

[DEFENSE COUNSEL]:  You're going to need to hear some evidence from me to explain why he's here or why they're wrong to have him here, correct?

MR. KENDRICKS:  Absolutely.

[DEFENSE COUNSEL]:  So what you're telling us is that you're going to require the Defense to put on some evidence to counter why he's here, correct?

MR. KENDRICKS:  I would expect you to defend why he's in this situation he's in.

[DEFENSE COUNSEL]:  Right.  So you're going to require me to bring some evidence in this case?  You understand that's not the law, but in your mind you want to see something, don't you?

MR. KENDRICKS:  I'd be interested to know what his defense is, yeah.

[DEFENSE COUNSEL]:  Yeah.  Because if you remember the oath -- you remember the oath that you took [a] while ago?

7

MR. KENDRICKS:  Yes.

[DEFENSE COUNSEL]:  The only thing the Judge told you to do was tell us the truth at this point.  No other oath.  You're not obligated to follow the law.  You're not obligated to do anything except speak the truth, because of this right here.  It's important.  So the question -- and I can't let you sit down until I get a firm answer -- is, you're going to require me to prove something in this case, aren't you?

MR. KENDRICKS:  Prove something he did not do, wasn't against the law.

[DEFENSE COUNSEL]:  Either way, you're going to require me to prove something, correct?

MR. KENDRICKS:  Let's just say, I like to give you an opportunity to do that.

[DEFENSE COUNSEL]:  I can't let you sit down with that.  I need a firm answer because this Judge is going to say, well, you know, he kind of keeps an open mind.  My question is, you're not really saying, you know, I'm going to keep an open mind.  What you're saying is, I want to hear from you, [Defense counsel].  I want to hear why he's here, because I'm presuming he did something.  Right?

MR. KENDRICKS:  Yes, that's correct.

[DEFENSE COUNSEL]:  Which in my mind, that creates a little bit of bias against me because I don't have to bring any evidence, right?

MR. KENDRICKS:  No.

[DEFENSE COUNSEL]:  So that kind of puts me at an unfair advantage.  Do you see that?  We use the terms "bias" and "unfair," and in the real world, that seems politically incorrect. But in the courtroom, I need to know, because we just met, there's a bias against me and my client, correct?  Because you want to hear from him, correct?

8

MR. KENDRICKS: I know he's not obligated to speak for himself.

[DEFENSE COUNSEL]: You want to hear from me?

MR. KENDRICKS: Well, you're his legal counsel so . . . .

[DEFENSE COUNSEL]: All right. We'll come back to you. Don't think I'm going to leave you alone.

Fields's counsel did not ask Kendricks if he could follow the law regardless of his desire to hear the other side of the story. *See id.* Instead, he continued to question the venire panel, asking whether the potential jurors agreed with Sheperd. And when Fields's counsel characterized Sheperd as "the gentleman who said he walked in and assumed [Fields] had done something wrong," Sheperd stopped him, stating, "I'd like to correct your statement. I said I thought he did something. I never said wrong." Fields's counsel responded, "Okay. Fair enough. Thank you, Mr. Sheperd, for correcting that." Fields's counsel then reminded the venire panel that the State had the burden of proof, that Fields did not have to do anything, and that it would be the jury's job to test the evidence. He did not ask Sheperd or Kendricks whether they could follow the law regardless of their personal views. *See id.*

Defense counsel also asked the panel from whom they wanted to hear when coming to court, and an unidentified prospective juror said, "The Defendant." Defense counsel then reminded the panel that the Fifth Amendment said that the defendant had the right not to testify. He then asked who wanted to hear from the defendant. Potential juror #24 volunteered, stating, "I think it's just

9

natural curiosity." When Fields's counsel asked her whether she would expect the defendant to testify, she said, "I would say, yeah. I don't see any reason not to." Fields's counsel then asked her, "So if they didn't, you would hold it against them." She replied, "It would make me wonder, yeah." Defense counsel asked again, "In other words, hold it against [him]?" She replied, "Yes."[4]

Kendricks said, "Yes," when asked by defense counsel whether he would be sitting in the jury box, "going, I want to hear from the guest of honor, so to speak. Right? I want him to talk." The following conversation then occurred between Fields's counsel and Kendricks:

> [DEFENSE COUNSEL]: And if he didn't talk, in your mind, you would be saying, I need to hear from him?
>
> MR. KENDRICKS: Maybe explain why he doesn't want to talk. Got to hear that, too.
>
> [DEFENSE COUNSEL]: So he needs to explain why he's not talking?
>
> MR. KENDRICKS: Be nice if he says, well, I can't because, you know, maybe he had some compelling reason why he doesn't want to talk.
>
> [DEFENSE COUNSEL]: So you have to hear something?
>
> MR. KENDRICKS: I didn't say I had to. I said, it would be nice to hear something.
>
> [DEFENSE COUNSEL]: Well, I'm not going to tell you that.
>
> MR. KENDRICKS: Be nice.

---

[4]The trial court granted Fields's challenge for cause on bias as to this potential juror.

[DEFENSE COUNSEL]: So you need to hear something? We can dance around it all day, but you said, I need to hear from him.

MR. KENDRICKS: Depends on what I'm investigating or I'm trying to get.

[DEFENSE COUNSEL]: What about the 5th Amendment in a court case? You want to hear from the Defendant, right?

MR. KENDRICKS: You know, you got to respect the process. I mean, I got to respect the law. You know, law enforcement over half my years so, you know, I'm going to respect the process.

Once more, Fields's counsel did not ask Kendricks whether he could and would follow the law regardless of his personal views and curiosity, and, as set out above, Kendricks said that he would respect the law and the process.[5]

---

[5]In *Smith v. State*, when a potential juror who stated that based on our judicial system, he did not believe the case would go to trial "unless there was something there," we reflected that the potential juror, who also stated that he could follow the law,

> at most reflected the normal curiosity of any prospective juror in any lawsuit. . . . To expect any juror to say that he did not believe that some investigatory process and some 'finger pointing' had caused the assemblage of such a group in the courtroom would require as veniremen persons who would believe that defendants in criminal cases are chosen by lot and subjected to vicarious charges randomly selected.

699 S.W.2d 392, 393–95 (Tex. App.—Fort Worth 1985, pet. ref'd); *see also Sanchez v. State*, 813 S.W.2d 610, 611–12 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (holding no abuse of discretion on challenge-for-cause issue when prospective juror expressed belief that most defendants who go to trial will probably be found guilty but also said that if selected, he would go into the jury box without a predisposition as to appellant's guilt and could find him not guilty based on the evidence, and he expressed no prejudice towards the appellant or the law involved).

11

At the conclusion of voir dire, Fields challenged Kendricks and Sheperd for cause, arguing that Sheperd was biased and that Kendricks would require him to prove his innocence, and the trial court denied these challenges, forcing Fields to use peremptory strikes on them.[6]

Fields never responded to Kendricks's and Sheperd's vacillating answers by asking whether they could follow the law regardless of their personal views.[7] Therefore, we cannot say that the trial court abused its discretion by denying

_____

[6]The trial court denied Fields's request for additional peremptory strikes, and he identified two potential jurors that he would have otherwise struck, who made it onto the jury.

[7]We note that the law on the presumption of innocence and the burden of proof was restated several times during voir dire by the trial court, the prosecutor, and defense counsel. Even so, as set out above, Sheperd and Kendricks were never asked whether they could follow the law regardless of their personal views and vacillating answers. *Cf. Cardenas v. State*, 325 S.W.3d 179, 186 (Tex. Crim. App. 2010) (holding that defense counsel did not have to ask panel members a further question to properly preserve his denied challenges for cause). In *Cardenas*, more than fifty members of the jury panel stated that they could not consider the minimum punishment, and the defense challenged them for cause. *Id.* at 181. The trial court granted seventeen of the challenges and denied thirty. *Id.* at 183. During voir dire, the jury pool had been twice apprised of the applicable punishment range before the defense's voir dire, there was no ambiguity or confusion in how the law was explained, and all but two jurors simply answered "yes" or "no" when asked if they could not consider the full punishment range. *Id.* at 185–86. The court held that absent further questioning by the judge or prosecutor to clarify each juror's stated position, the trial court was required to grant defense's challenges for cause because it was a fair inference that the jurors who did not ask questions or seek further clarification understood what probation was, that probation was an option, and that five years in prison or probation was the minimum available, and anyone who responded "no" to counsel's question as to whether he or she could consider as little as five years in prison and probation as an appropriate punishment had expressed a bias against a phase of the law on which the defense was entitled to rely. *Id.* at 186.

12

these challenges for cause. *See Gonzales*, 353 S.W.3d at 832; *Curtis*, 205 S.W.3d at 659. We overrule both of Fields's issues and affirm the trial court's judgment.

/s/ Charles Bleil
CHARLES BLEIL
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER J., and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 30, 2015