# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00725-CR

**Ernest Garcia, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2020-774, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Ernest Garcia challenges his convictions for two counts of indecency with a child by contact. *See* Tex. Penal Code § 21.11(a)(1). In his sole issue, he contends that the trial court erred by preventing him from asking the potential jurors a set of questions during jury selection about their beliefs concerning the "Me Too" movement. We affirm.

## BACKGROUND

Garcia was charged by indictment with aggravated sexual assault of a child (count 1), *see id.* § 22.021, and indecency with a child by contact (count 2), *see id.* § 21.11(a)(1). The indictment alleged a prior conviction for sexual contact with a child for enhancement of punishment. *See id.* § 22.011.

During voir dire the prosecutor discussed with the potential jurors the importance of being fair when assessing witness credibility. Specifically, the prosecutor explained that individuals from any group—including police officers, priests, drug dealers, and children—can lie

or tell the truth and that to be on the jury they need to "be willing to not come in with preconceived ideas" of a witness's truthfulness. At the end of its presentation, the State went through and asked each potential juror who had not previously stated they could not be fair whether they would be "a good juror for this case."

Later in voir dire, defense counsel discussed generally the presumption of innocence and the burden of proof. He then asked the potential jurors if they would give extra weight to a uniformed police officer's testimony. Through a series of questions, one of the potential jurors agreed that "there's good and bad in every profession." Defense counsel asked a question regarding the Fifth Amendment protection against self-incrimination. Using the aid of a PowerPoint presentation, defense counsel showed the jury a slide with a picture of Harvey Weinstein on it, told the jury about his personal concerns about the "Me Too" movement, and then attempted to ask the jury panel a question about their feelings regarding the movement. Specifically, after a potential juror identified the individual in the photo as Harvey Weinstein, defense counsel stated:

> Harvey Weinstein.
>
> Everything changed in 2018. I don't know if y'all remember that Academy Awards that happened in April of 2018, I think. Right before that, everything exploded with Harvey Weinstein. They had all these people making allegations, and it was "all accusers must be believed," right? And everything changed in Hollywood, everything changed in a lot of different areas, even the corporate world. And as a criminal defense attorney, you know, it's scary as hell because on one side you have presumption of innocence and this idea that you have the right to remain silent and all that stuff. And when "all accusers must be believed" came out there, it kind of changed everything, didn't it?
>
> And imagine that kind of crept its way into the criminal justice system. It's a lot harder to get a jury to listen to a case the way that they should when they are hearing that.

2

And so it leads to certain questions. And so I have opinions on this "me, too" movement. Like I said, I'm only going to ask those of you who have [not] already said you could not be fair on this question.[1] So it's a question with three different answers, what your opinion is regarding this movement. And the first answer is: I think all accusers should be believed. The second one is: I think all accusers should be believed, unless and until evidence is brought forward to prove they are lying. And three is: I think people who make accusations must provide evidence before I will believe them.

After one potential juror responded to the question, answering "3," the trial court asked counsel to approach. During the bench conference, the trial court expressed that he believed the question to be an improper commitment question. Specifically, he expressed that a positive response to the first two options would result in challenges for cause and that the third option was a comment on the weight of the evidence. The State responded to the trial court that it "was dangerously close" to a commitment question and that it did not necessarily lead to a challenge for cause. The trial court informed counsel that he would not allow the question and that he would allow defense counsel to put on the record what he was going to ask the jury panel once they were done asking them questions.

Defense counsel then moved on from that question. He asked the potential jurors for their opinions about the purpose of punishment in the criminal justice system and about their ability to consider the full range of punishment. He then asked individual potential jurors about their previous experiences being on a jury and about their employment history. He then discussed the movie 12 Angry Men and asked the potential jurors to commit to not getting "steamrolled" and

---

[1] It is unclear from the record whether counsel misspoke in this statement. Earlier in voir dire, defense counsel stated that he was only going to ask questions to panelists who had *not* previously said they could not be fair in this case.

rather "to stand [their] ground." After asking the potential jurors if they had any questions, which they did not, he concluded his presentation.

Outside the presence of the jury panel, defense counsel put on a proffer of evidence regarding his excluded question. He explained that he had a follow-up question that he would have asked if allowed. Specifically, he stated,

> Number three is the standard under the law, one, that the State must prove every element of the offense beyond a reasonable doubt; two, that the Defendant is presumed innocent, and, three, the Defendant is under no obligation to present a defense. And then I['d] ask[] them: Do you disagree with the law?

The trial court admitted the slides that counsel would have presented if allowed. The slide with the prohibited question was titled, "Opinions on Me Too Movement." The slides that counsel would have shown next were titled "#3 is the standard under the law" and "Do you disagree with the law?" The trial court responded that it had overruled defense counsel's attempt to ask the question with the set of three answers and that "the rest is kind of superfluous at this point." Following the proffer, strikes for cause and preemptive strikes were made, and then the jury was impaneled.

During trial the State presented evidence through witness testimony that the victim, Ashley Rhodes,[2] who was nine years old at the time of the offense and twelve when she testified at trial, lived with her father who was a single parent. Garcia was a longtime friend of Rhodes' father. Father worked 14 hours a day as a forklift driver during the time of the offense and relied

---

[2] Ashley Rhodes is the pseudonym used throughout this case, including in the indictment, to protect the privacy of the minor victim. We will use that pseudonym here and we will refer to the other witnesses by their relationship to her rather than by name. *See* Tex. R. App. P. 9.10(a)(3).

on family and friends to help watch Rhodes when he was at work. Garcia was one of those friends. One night in 2020 when Garcia was watching Rhodes after her father had left for work, she was awoken by a noise. Garcia, who was sleeping in the same bed with Rhodes, began touching her "boobs and vagina" with his hands inside her clothing. Later that year, Rhodes made an outcry to a family friend who told Rhodes' father. After speaking with his daughter, Father called the police.

Rhodes testified at trial that Garcia had touched her "boobs and vagina," including penetrating her vagina with his finger, on one occasion when he was babysitting her. The SANE nurse that conducted a forensic examination of Rhodes about five months after the offense occurred testified that Rhodes had placed an "x" on an anatomy picture to show where Garcia had touched her. She admitted that the "x" was placed on the outside of the labia majora rather than on the vagina. When asked about the placement of the "x," Rhodes confirmed that she was alleging that Garcia penetrated her vagina and that she believed the placement of the "x" indicated that.

During the guilt-innocence phase of trial, the State also presented documentary evidence that Garcia had previously been convicted of indecency with a child by contact. The victim from that case testified about the underlying facts of that offense.

After hearing all the evidence, the jury found Garcia guilty of the lesser-included offense of indecency with a child by contact for count 1 and found him guilty as charged for count 2. After hearing the evidence on punishment, the jury found the enhancement allegation to be true and assessed the mandatory punishment of life imprisonment for each offense. *See* Tex. Penal Code § 12.42(c)(2) (mandating life sentence for offense of indecency with child if defendant has previously been convicted of sexual contact with child). Garcia appealed.

5

# LEGAL STANDARD

We review a trial court's ruling limiting jury selection questioning for an abuse of discretion. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). "A trial court has broad discretion over the voir dire process, including setting reasonable limits and determining the propriety of a particular question." *Samaripas v. State*, 454 S.W.3d 1, 5 (Tex. Crim. App. 2014). In this context, a trial court abuses its discretion only when a proper question about a proper area of inquiry is prohibited. *Id.* A jury selection question is proper if it seeks to discover a potential juror's views on an issue applicable to the case. *Barajas*, 93 S.W.3d at 38. An example of a relevant voir dire question "is if it seeks to uncover grounds for a challenge for cause[,]" by establishing that a potential juror: (1) "possesses a bias or prejudice in favor of or against the defendant," (2) "possesses a bias against a phase of the law upon which the State or the defendant is entitled to rely," or (3) "has already decided the defendant's guilt or punishment[.]" *Id.* at 39. However, an otherwise proper question is impermissible if the question attempts to commit the potential juror to a particular verdict based on particular facts. *Id.* at 38. Indeed, a trial court has "discretion to restrict voir dire questions that are confusing, misleading, vague and broad, or are improper commitment questions." *Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012). Additionally, "if the trial court merely limits a question due to its form, trial counsel must determine the basis of the limitation and attempt to fashion a query which complies with the perceived inadequacy." *Wright v. State*, 28 S.W.3d 526, 534 (Tex. Crim. App. 2000) (noting that "[a]lthough appellant is authorized to ask proper questions in a particular area of inquiry, he is not entitled to ask questions in any particular form").

When a trial court erroneously prohibits a proper voir dire question, such error is nonconstitutional error. *See Easley v. State*, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014) (holding

that when trial court erroneously prohibits specific question, rather than entire proper legal concept, it is nonconstitutional error). Thus, we review any error from a prohibited voir dire question under Rule 44.2(b)'s harm analysis, which requires that we disregard any "error, defect, irregularity, or variance that does not affect substantial rights." *See* Tex. R. App. P. 44.2(b).

## DISCUSSION

Garcia contends that by prohibiting his questions regarding the jury panel's "Me Too" movement opinions, he was prevented from asking questions about their opinions and ability to follow the law on the presumption of innocence, burden of proof, and witness credibility that could have resulted in panelists being challenged for cause. The State responds that the trial court did not abuse its discretion in limiting the specific question because trial courts have great discretion in how to conduct voir dire, because Garcia was not prevented from asking other questions about witness credibility but rather only the specific way he attempted to ask, and because the specific question could have confused the jury by conflating personal views held in the "court of public opinion" and the legal standards to be applied during a criminal trial.

Here, the trial court could have reasonably concluded that the question—"So it's a question with three different answers, what your opinion is regarding this movement"—could confuse or mislead the venire. *See Hernandez*, 390 S.W.3d at 315 (noting that restricting potentially confusing or misleading questions is within trial court's discretion). The "Me Too" movement question did not ask for the potential juror's opinion within the context of a legal setting. Rather it was asking the panelists about their opinions and views regarding outcries of harassment and sexual abuse and assault by individuals in non-legal settings. Specifically, counsel mentioned the entertainment industry and the corporate world. While counsel also mentioned that the social

7

movement created concern for him in the legal context, the question did not ask the panelists for their views on how to handle outcries in the context of witness credibility during a trial or under legal standards. Rather, the question was titled, "Opinions on Me Too Movement." Although, defense counsel presented his intended follow-up questions that did ask about the standard under the law, those were not presented or attempted to be asked at the time of the ruling. Thus, the trial court could have reasonably concluded that the prohibited question had the potential to confuse or mislead the jury panel.

Further, the trial court expressed its concerns about the restricted question. Defense counsel did not attempt to ask a different question to ascertain the potential juror's views of the presumption of innocence, burden of proof, or witness credibility. *See Wright*, 28 S.W.3d at 534 (concluding that "[b]ecause [defense counsel] did not follow through on this topic, we cannot say that the trial court improperly restricted his voir dire"). On this record, we cannot determine that the trial court limited the entire topic rather than just the form of the specific question. *See id.* The trial court's allowance of defense counsel discussing his personal concerns about the "Me Too" movement and only stopping him after hearing the specific question, supports that the trial court was limiting its prohibition to the specific question and not the whole topic. Thus, we conclude on this record that the trial court did not abuse its discretion when it disallowed the specific question restricted in this case.[3]

---

[3] Since we have concluded that the trial court did not abuse its discretion because it could have reasonably considered the question improper, we do not need to reach the question of whether it was an improper commitment question. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *Barajas*, 93 S.W.3d at 38 (noting that otherwise proper question may still be improper commitment question).

8

Furthermore, even if exclusion of the question was error, Garcia has not shown that he was harmed. First, we address Garcia's contention that the excluded question constitutes constitutional error. He contends that asking the question would have resulted in challenges for cause and thus, preventing him from doing so violated his right to a fair and impartial jury as protected by the Sixth and Fourteenth Amendments. We disagree. While prohibitions on proper areas of questioning can rise to the level of constitutional error, when the trial court restricts a specific question rather than a whole concept, the proper harm analysis is the nonconstitutional error analysis. *See Easley*, 424 S.W.3d at 541.

In conducting a harm analysis for an erroneously excluded voir dire question, we must determine "whether the error had a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). To do so, we review the entire record and use "the same general factors used in cases in which evidence was erroneously admitted." *Easley*, 424 S.W.3d at 542.

Here, a review of the record weighs against finding harm. Nothing indicates that any juror was unable to fairly assess witness credibility and weigh the evidence presented. No evidence shows that the jury was ever presented with an instruction or argument that they should always believe a sexual assault victim without considering credibility or the weight of the evidence. Rather, the State explained to the jurors during voir dire that anyone including children can lie or tell the truth and told the jurors they needed to "be willing to not come in with preconceived ideas" to be on the jury, before asking them individually if they would be "a good juror for this case." Further, the jury's decision to convict Garcia of the lesser included offense for count I supports that the jury did not believe everything the victim testified to but rather considered and weighed the conflicting evidence presented about whether penetration occurred. Thus, we

9

cannot conclude that any error had a substantial and injurious effect or influence in determining the jury's verdict.

We overrule Garcia's sole issue.

## CONCLUSION

Because we overrule Garcia's sole issue, we affirm the trial court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, Kelly

Affirmed

Filed:　October 2, 2024

Do Not Publish