

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00220-CR

———————————————

BRADLEY EARL KARR, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1729404D

Before Bassel, Womack, and Wallach, JJ.
Opinion by Justice Wallach

## OPINION

A jury found appellant Bradley Earl Karr guilty of failure to register as a sex offender, a third-degree felony. *See* Tex. Code Crim. Proc. Ann. art. 62.102(b)(2). The trial court found two enhancement paragraphs true and assessed Karr's punishment at 15 years' confinement.

On appeal, Karr raises two issues:

- the trial court erred by admitting, over his hearsay objection, a Department of Public Safety (DPS) document that identified which offenses under the Uniform Code of Military Justice corresponded to Texas offenses requiring registration; he maintains that this document was the only evidence showing that he had a conviction from another jurisdiction that required him to register in Texas; and

- the evidence was insufficient to prove that he was a habitual offender because the two prior convictions used to enhance his punishment were not sequential but contemporaneous; he asserts that to qualify as a habitual offender, the convictions had to be sequential.

As for Karr's first issue, we hold that the DPS document was admissible as a public record because DPS prepared it for purposes unrelated to any specific litigation. We thus overrule Karr's first issue.

Regarding Karr's second issue, we hold that the trial court did not use the two prior convictions to punish Karr as a habitual offender. Rather, it erroneously used one conviction to enhance Karr's offense, thereby improperly making it a second-degree felony, and then erroneously used the second conviction to enhance Karr's punishment to that of a first-degree felony. Although the trial court assessed a punishment within the range of a second-degree felony, we nevertheless hold that the

2

error was harmful. We thus sustain Karr's second issue, reverse the trial court's judgment, and remand the case to the trial court for a new trial on punishment.

## I. BACKGROUND

Karr was convicted in 2007 of an offense under the Uniform Code of Military Justice at the Mountain Home Air Force Base in Idaho that required him to register in Idaho as a sex offender. Specifically, Karr was convicted for possessing child pornography. When Karr moved to Texas in 2015, DPS determined that the elements of his military-justice offense were substantially similar to the elements of a Texas offense requiring registration. Karr thus had to register as a sex offender in Texas as well.

Thereafter, the State indicted Karr twice for not registering as a sex offender—once in 2016 and once in 2018. Karr was convicted of both offenses on the same date in 2018.[1] He received concurrent three-year sentences.

In February 2022, Karr called the police because he feared his home was being burglarized. The police responded but did not find a burglar. During their investigation, the police determined that Karr had not registered as a sex offender.

In May 2022, the State indicted Karr for failing to register as a sex offender. The State structured the indictment to use one of Karr's prior convictions to enhance his offense and the other prior conviction to enhance his punishment.

---

[1]Karr had received deferred adjudication community supervision for the 2016 indictment. In 2018, the trial court adjudicated him guilty.

During the jury trial on guilt or innocence, to prove that Karr had an offense from another jurisdiction that required him to register as a sex offender in Texas, the State relied on a DPS document that listed offenses under the Uniform Code of Military Justice that corresponded to Texas offenses requiring registration. *See* Tex. Penal Code Ann. § 12.42(g)(2).

After the jury found Karr guilty, Karr went to the court for punishment. During the bench trial on punishment, the trial court used Karr's two prior convictions for failure to register in the same manner that the State had used them in its indictment. The trial court used one to enhance Karr's offense from a third-degree to a second-degree felony offense and the other to enhance Karr's punishment range from that of a second-degree to that of a first-degree felony.

The difference in punishment ranges for second- and first-degree felonies is substantial. For a second-degree felony, the punishment range is any term of years of not more than 20 years or less than 2 years and a fine not to exceed $10,000. *Id.* § 12.33. For a first-degree felony, the punishment range is life or any term of years of not more than 99 years or less than 5 years and a fine not to exceed $10,000. *Id.* § 12.32.

The trial court sentenced Karr to fifteen years in prison. This sentence thus fell within the punishment ranges of both a first- and second-degree felony.

4

## II.  FIRST ISSUE

In Karr's first issue, he contends that the trial court erred by admitting, over his hearsay objection, the DPS document. *See id.* § 12.42(g)(2). Karr contends that the DPS document was the only evidence showing that his military-justice conviction shared the same elements as a Texas offense requiring registration; therefore, he concludes, its admission was harmful.

### A.  Standard of Review

When the trial court admits evidence, we review its ruling for an abuse of discretion. *Wright v. State*, 618 S.W.3d 887, 890 (Tex. App.—Fort Worth 2021, no pet.). Under this standard, we will uphold the trial court's decision so long as it was within the zone of reasonable disagreement. *Id.* We will not disturb the trial court's ruling if it was correct under any legal theory. *Id.*

### B.  The DPS Document

DPS had a legal duty to compile the document. Tex. Code Crim Proc. Ann. art. 62.003(a). It must annually prepare a document determining which convictions from other jurisdictions correspond to Texas offenses requiring registration. *Id.* art. 62.003(a), (b). This document is the *only* means that the State may use to prove that a defendant has a conviction from another jurisdiction requiring him to register in Texas. *See Crabtree v. State*, 389 S.W.3d 820, 832 (Tex. Crim. App. 2012).

### C.  Public Records

Karr maintains that the DPS document was inadmissible hearsay. We disagree.

5

One basis for admitting the document was under the public records exception to hearsay:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> (8) **Public Records.**  A record or statement of a public office if:
>
> > (A) it sets out:
> >
> > > (i) . . . ;
> > >
> > > (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> > >
> > > (iii) . . . ; and
> >
> > (B) the opponent fails to demonstrate that the source of information or other circumstances indicate a lack of trustworthiness.

Tex. R. Evid. 803(8)(A)(ii), (B).

DPS personnel, Karr asserts, are law-enforcement personnel. *See Martinez v. State*, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000) (citing *Cole v. State*, 839 S.W.2d 798, 803 (Tex. Crim. App. 1990), *op. on reh'g*, 839 S.W.2d 806 (Tex. Crim. App. 1992)).[2] Karr maintains that the DPS document was not admissible under this exception

---

[2]In *Martinez*, the report in dispute was never offered into evidence but formed one of the bases for an expert's opinion. *Id.* The court wrote that the expert "was free to offer his opinion based on [the] report. And since [the defendant] never challenged [the witness's] expert qualifications, his present opinion regarding the test results was properly admitted over [the defendant's] hearsay objections." *Id. Cole* provides a more analogous evidentiary issue, so we will focus on *Cole*.

because it contained matters "observed by law-enforcement personnel." *See* Tex. R. Evid. 803(8)(A)(ii).

Whether DPS employees are law-enforcement personnel is not dispositive; the nature of their work is. In *Cole*, a DPS chemist worked on a specific criminal investigation; his report was inadmissible under Rule 803(8)(B) for lack of trustworthiness because it was prepared as part of the adversarial process in a specific case. *Cole*, 839 S.W.2d at 804, 809–10. The court in *Cole* distinguished the chemist's reports from other types of reports: "[T]he [chemist's] reports were not prepared for purposes independent of specific litigation, nor were they ministerial, objective observations of an unambiguous factual nature." *Id.* at 805, 810.

This distinction is dispositive. Rule 803(8)(A)(ii) allows the admission of law-enforcement reports that

- are prepared in a nonadversarial setting,

- are unrelated to any specific litigation, and

- record objective, neutral observations.

*Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *5 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication); *see Pondexter v. State*, 942 S.W.2d 577, 585 (Tex. Crim. App. 1996) (citing *United States v. Quezada*, 754 F.2d 1190, 1193–94 (5th Cir. 1985)); *Cole*, 839 S.W.2d at 804, 810. The rule excludes the admission of law enforcement's crime-scene or investigation

7

observations because such observations, opinions, and narrations are made while the officer is "engaged in the often competitive enterprise of ferreting out crime" and are thus inherently adversarial and less reliable than other types of public records. *Emich*, 2019 WL 311153, at *5 (citing *Fischer v. State*, 252 S.W.3d 375, 382 (Tex. Crim. App. 2008) (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 369 (1948))). In Karr's case, the DPS document was prepared independently of any one criminal case. Therefore, the exception to the exception on which Karr relies does not apply.

Karr does not argue that the DPS document was otherwise untrustworthy under Rule 803. *See* Tex. R. Evid. 803(8)(B). We hold that the trial court did not abuse its discretion by admitting the DPS document as a public record under Rule 803.

We overrule Karr's first issue.

### III. SECOND ISSUE

In Karr's second issue, he argues that the evidence was insufficient to prove the State's habitual offender allegation under Section 12.42(d) of the Texas Penal Code. *See* Tex. Penal Code Ann. § 12.42(d). He argues that an enhancement under Section 12.42(d) (two prior convictions, the second offense being committed after the first conviction became final) would not be possible under his facts because his two prior convictions were on the same date. *See id.*

A. Background

Karr's second issue requires some unravelling. The State's theory of the case was that Karr committed a third-degree felony, that the offense was enhanced to a

second-degree felony by a prior conviction for failure to register, and that the punishment for this second-degree felony was further enhanced to that of a first-degree felony based on a second prior conviction for failure to register. The State's indictment tracks this theory of the case.

### 1. Indictment

In the indictment, the State alleged that Karr had failed to register as a sex offender in April 2022 and that he was required to register under Article 62.101(a) of the Texas Code of Criminal Procedure based on a 2007 conviction in the Courts Martial–United States Military. The State alleged a third-degree felony. *See* Tex. Code Crim. Proc. Ann. art. 62.102(b)(2).

In a separate paragraph, the State further alleged that Karr had a prior conviction for failure to register that occurred on August 17, 2018, under cause number 1547627D. Significantly, this paragraph was not introduced with a "Repeat Offender Notice" and was thus intended to enhance Karr's offense.

In the final paragraph, which was introduced with a "Repeat Offender Notice," the State alleged that Karr had a prior conviction for failure to register that occurred on August 17, 2018, under cause number 1470866D. The "repeat offender" language indicates that the State thought it was enhancing Karr's punishment with only one prior conviction.

The term "repeat offender" in the Texas Penal Code is used when the State seeks to enhance a defendant's punishment with only one prior conviction. *See* Tex.

9

Penal Code Ann. § 12.42(a)–(c). In contrast, when the State seeks to enhance a defendant's punishment with two prior convictions—with the qualification that the second offense occurred after the first conviction became final—the code uses the term "habitual offender." *See id.* § 12.42(d).

Reinforcing the conclusion that the State sought one offense enhancement and one punishment enhancement, the indictment identifies the offense as "Fail to Comply Sex Off Duty to Reg w/Prev IAT"[3] and includes "Repeat Felony Offender." Consequently, the State thought it was alleging a third-degree felony, which was enhanced to a second-degree offense with one prior conviction, whose punishment was further enhanced to that of a first-degree felony by a second prior conviction.

## 2. Trial Court

When informing Karr of his punishment range, the trial court followed the construct that the State used in the indictment: "You understand for the first called -- for the first offense, that is a[n] enhancement to the -- that would raise it to a second-

---

[3]"IAT" means "if at trial" or "shown at trial." Cassandra Richey, *Understanding Offense Codes*, 13–14, https://www.dps.texas.gov/sites/default/files/documents/administration/crime_records/docs/cjis/2018cjisjjisconf/understandingoffensecodes.pdf (last visited Jan. 25, 2024); *see, e.g.*, Tex. Code Crim. Proc. Ann. art. 62.102(c) ("If it is shown at the trial . . . ."); Tex. Penal Code Ann. § 12.42(a), (b), (c), (d) ("[I]f it is shown on the trial of . . . .").

degree felony. The second enhancement raises it to a first-degree felony. That makes it a five to 99 offense range."[4] *See* Tex. Penal Code Ann. § 12.32(a).

### 3. Judgment

The judgment corroborates the State's and the trial's court's position in three respects:

- the offense is identified as "Sex Offender[']s Duty to Register w/Prev Conviction";

- the degree of felony is identified as "Hybrid Felony"; and

- the second enhancement paragraph is shown as "Waived," and the finding regarding the second enhancement paragraph reflects "N/A."

## B. Not Tried as a Habitual Offender

To the extent that Karr argues he was improperly tried as a habitual offender under Section 12.42(d), i.e., he was tried as having previously committed a second offense after his first conviction had become final, his argument fails. He is correct that he could not be enhanced under that provision because his two prior convictions were on the same date. *See id.* § 12.42(d). The trial court was not, however, proceeding under Section 12.42(d). Under Section 12.42(d), the punishment range is life or any term of years of not more than 99 or less than 25 years. *Id.* When stating the punishment range, the trial court did not use this one.

---

[4]For an example of how an error, once introduced into a case, can permeate the remaining proceedings, see *Hernandez v. State*, No. 05-03-00107-CR, 2003 WL 22017228, at *1 (Tex. App.—Dallas Aug. 27, 2003, no pet.) (not designated for publication).

## C. Article 62.102(c): Enhanced Punishment, Not Enhanced Offense

The Texas Code of Criminal Procedure identifies the failure to register as required under Article 62.101(a) as a third-degree felony. Tex. Code Crim. Proc. Ann. art. 62.102(b)(2). It further provides that if the person required to register had been previously convicted of a failure to register, the person's *punishment* is increased to the next punishment level. *Id.* art. 62.102(c). This is a punishment enhancement, not an offense enhancement. *See Ford v. State*, 334 S.W.3d 230, 235 (Tex. Crim. App. 2011); *Henderson v. State*, 582 S.W.3d 349, 355–56 (Tex. App.—Amarillo 2018, pet. ref'd).

Based on the indictment, the State was attempting to use Article 62.102(c) to enhance Karr's offense (rather than enhancing his punishment) from a third-degree to a second-degree felony. The trial court followed the State's lead by doing the same. This was error. Article 62.102(c) does not enhance the offense; it enhances the punishment. *See Ford*, 334 S.W.3d at 235; *Henderson*, 582 S.W.3d at 355–56. Under Article 62.102(c), using one of Karr's prior convictions, his offense remained a third-degree felony, but it was punished as a second-degree felony.

For the enhancement to work as the State wanted and as the trial court applied it, the legislature would have had to write the statute differently. *See Samaripas v. State*, 454 S.W.3d 1, 7 (Tex. Crim. App. 2014).

## D. Section 12.42 Discussion: Section 12.42(a), Not Section 12.42(b)

When enhancing a punishment under Section 12.42, the provision that applies depends on the degree of the felony being tried:

- Section 12.42(a) enhances punishment "if it is shown on the trial of a felony of the third degree." Tex. Penal Code Ann. § 12.42(a). It raises the punishment range to that of a second-degree felony, i.e, any term of years of not more than 20 years or less than 2 years and a fine not to exceed $10,000. *Id.* § 12.33.

- Section 12.42(b) enhances punishment "if it is shown on the trial of a felony of the second degree." *Id.* § 12.42(b). It raises the punishment range to that of a first-degree felony, i.e., life or any term of years of not more than 99 years or less than 5 years and a fine not to exceed $10,000. *Id.* § 12.32.

- Section 12.42(c) enhances punishment "[i]f it is shown on the trial of a felony of the first degree." *Id.* § 12.42(c). It raises the punishment range to life or any term of not more than 99 years or less than 15 years and a fine not to exceed $10,000. *Id.*

Because Karr was tried for a third-degree felony, under Section 12.42, his punishment could be enhanced only under Section 12.42(a). *See id.* § 12.42(a). Compared to Article 62.102(c), both provide the same punishment enhancement. Both Section 12.42(a) and Article 62.102(c) raise the punishment range to that of a second-degree felony. *See* Tex. Code Crim. Proc. Ann. art. 62.102(c); Tex. Penal Code Ann. § 12.42(a). Both use the identical baseline. *See Crawford v. State*, 509 S.W.3d 359, 363 n.7 (Tex. Crim. App. 2017). Neither offers the State an advantage over the other.

Because Karr was not tried for a second-degree felony, the punishment enhancement under Section 12.42(b) was not available to the trial court. That, however, is what the trial court used when it announced that Karr's punishment range was for any term not exceeding 99 years or less than 5 years.

Consequently, although we disagree with Karr that his punishment range was improperly enhanced under Section 12.42(d), we agree that his punishment range was

nevertheless improperly enhanced under Section 12.42(b). The State concedes this point in its brief.

Although improper enhancement under Section 12.42(b), specifically, was not the thrust of Karr's original brief, improper enhancement was. In Karr's reply brief, he contends his punishment could not have been enhanced under Section 12.42(b) either.

Briefing rules are to be construed liberally. *See* Tex. R. App. P. 38.9. Issues "will be treated as covering every subsidiary question that is fairly included." *See* Tex. R. App. P. 38.1(f). Karr contends that the trial court, when determining his sentence, applied an incorrect range of punishment. We agree. The State agrees too, but it maintains that Karr was not harmed.

## E. Harm

A sentence outside the statutory punishment range for an offense is void and must be reversed. *Farias v. State*, 426 S.W.3d 198, 200 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The fifteen-year sentence that the trial court imposed is not illegal in the sense that it exceeds the punishment range of a second-degree felony. A fifteen-year sentence is within the range of a second-degree felony. *See* Tex. Penal Code Ann. § 12.33. Nor is the sentence illegal in the sense that no evidence supports one or both alleged enhancements. *See, e.g., Jordan v. State*, 256 S.W.3d 286, 292 (Tex. Crim. App. 2008). Here, Karr pleaded true to both convictions, and both judgments were admitted into evidence. The evidence thus supports both convictions.

14

Nevertheless, we must determine whether the error was harmful. Fortunately, the Texas Court of Criminal Appeals has already addressed this issue and determined that the error is far from a trifling one:

> The nature of the right [the defendant] seeks to vindicate leads us to conclude that it is one that is a significant feature of our judicial system and should be classified as a *Marin* category-two right.[5] In the absence of a defendant's effective waiver, a judge has an independent duty both to identify the correct statute under which a defendant is to be sentenced and the range of punishment it carries and to consider the entire range of punishment in sentencing a defendant irrespective of a defendant's request that he do so. And as we have made clear, a defendant "need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them." The unfettered right to be sentenced by a sentencing judge who properly considers the entire range of punishment is a substantive right necessary to effectuate the proper functioning of our criminal justice system. The Legislature has defined, by the offense's degree and possible punishment assigned to it, the punishment all convicted offenders are exposed to for certain offenses. Failing to consider all available punishment carries an unacceptable risk of undermining the principle that the judicial system applies equally the range of punishment to all offenders. A contrary conclusion has the potential of shaking the public's perception of the fairness of our judicial system and breeding suspicion of the fairness and accuracy of judicial proceedings. The nature of this right is too significant to the judicial system to conclude that it is extinguished by mere inaction.

---

[5]*Marin* set out the general preservation requirements and separated a defendant's rights into three categories—absolute, waivable, and forfeitable. *Grado v. State*, 445 S.W.3d 736, 738–39 (Tex. Crim. App. 2014) (citing *Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993), *abrogated on other grounds by Matchett v. State*, 941 S.W.2d 922, 928 (Tex. Crim. App. 1996) (harm analysis)*, and overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (harm analysis)).

*Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014) (footnote omitted).[6]

When first considered by the court of appeals, the appellate court concluded that the defendant in *Grado* was harmed:

> Given the evidence of [the defendant's] substantial compliance with the terms and conditions of community supervision for eight and one-half years and his payment of a vast majority of the fine imposed, and considering the likelihood that the trial court misconstrued the applicable penalty group for the controlled substance in question and the appropriate range of punishment, we cannot say that the trial court would not have assessed a lesser sentence had the full range of punishment been properly understood and considered. Having grave doubts the punishment assessed was free from the substantial influence of the error in this case, we find the error to be reversible as to punishment only.

*Grado v. State*, No. 07-11-00468-CR, 2013 WL 3355743, at *5 (Tex. App.—Amarillo June 28, 2013), *aff'd*, 445 S.W.3d 736 (Tex. Crim. App. 2014).

Turning to Karr's case, during final arguments, Karr requested a 5-year sentence. The State, in contrast, requested a 15-year sentence. In the context of an offense punishable as a first-degree felony with the possibility of a life or 99-year sentence—which was, after all, the framework within which both parties were operating—both proposed relatively lenient sentences, with Karr advocating for the more lenient of the two.

---

[6]The Texas Court of Criminal Appeals's opinion focused on whether the defendant could raise his complaint for the first time on appeal and concluded that he could. *Id.* at 737, 743. The court did not challenge the appellate court's conclusion that the error was harmful.

Another factor is a defendant's previous sentences. Although the State had two prior convictions, the statutory scheme made the second conviction meaningless for purposes of enhancing the punishment range. That is not to say that the second conviction could not be used when deciding where to set Karr's punishment within the proper range. Previous sentences impact punishment in another way. When assessing a sentence, a factfinder is not likely to assess a punishment below that which the defendant previously received, especially if the previous conviction was for the same offense. The earlier sentence thus might have a ratcheting effect. The State argued this point during arguments: "Whatever punishment he received in those first two cases was clearly and wholly insufficient to change his behavior." Here, for Karr's two prior convictions for failure to register, he had received concurrent three-year sentences. Thus, this was not a circumstance where a prior sentence set a high floor to any subsequent sentence.

Based on the time-served awarded in the judgment, Karr had spent nearly a year (357 days) in jail before he was sentenced. The record shows that Karr applied himself while awaiting trial. Shortly after being indicted, Karr enrolled in the Military Veteran Program at the Green Bay Facility, attended classes without incident, came prepared daily, and actively participated in the program. The coordinator for the program praised Karr's participation:

> Inmate Karr was chosen as a peer mentor inside the pod. He was responsible for making sure everyone received the assignments, understood them and turned them in when due. He also conducted the

17

pod meetings every week. He initially entered this program to gain treatment and rehabilitation and ended up being a leader among his fellow peers. Through my many interactions with him he has left a lasting impression of his involvement and progress made through the Military Veterans Program.

Karr also completed the 40-hour Pathways to H.O.P.E. Prevocational and Work Readiness Program. Additionally, a Pathfinders coordinator praised Karr for his participation in a mentoring program:

> During this time [in jail], [Karr] has demonstrated personal growth, a desire for change in his future lifestyle, and a willingness to help fellow group members become engaged in group mentoring. He is very energetic and very intelligent. Bradley has a lot to offer the community in general[] and has several business ideas to act on when he is released. Mr. Karr is visibly more positive now than when he initially started the mentoring program. He wants to utilize the resources that have been presented to him through his participation in the group sessions presented by Pathfinders. Advanced employment, r[é]sum[é]s skills[,] and personality assessments and interpersonal assessments are some of the classes that Mr. Karr has attended while in the Pathfinders program. Mr. Karr has been invited to follow up with Pathfinders upon his release from Tarrant County.

The Pathfinders director also praised Karr:

> Mr. Karr was extremely interactive in the class; he participated by lending advice and life experiences to fellow classmates that was relative to the topics discussed. He completed all the required necessary requirements within the Student Guide to graduate the course and receive a certificate. Mr. Karr also made sure the conversation stayed on topic and helped guide the class to understanding different aspect[s] that [were] relative to their situations. Mr. Karr continued to add to the course above what was required and learn more from each lesson that he could implement in the next phase of the Pathways Program—"Journey Home[."]
>
> Mr. Karr completed the Pathways to H.O.P.E. 40[-hour]-classroom-based Pre-Vocational and Workforce Readiness component.

Mr. Karr volunteered to take the course. Upon completion of the 40[-hour] course, Mr. Karr is now approved and accepted to attend the 12-month Journey Home program upon his release. The 12-month course is a Vocational and Leadership program which includes a Restorative Justice module.

Karr received Pathfinder certificates for completing its "Financial Coaching Banking" class and its "Financial Coaching[] and completing a Budget" class.

As for Karr's original military-justice conviction, it was for possession of child pornography. In the scheme of legislative child offenses, this is a lesser one. *See* Tex. Penal Code Ann. § 43.26(d) (providing that a first conviction for possession of child pornography is a third-degree felony). Since his military-justice conviction in 2007, Karr's criminal history is limited to failure to register.

Fundamentally, the dynamics of assessing a punishment when the competing ranges are 2 to 20 and 5 years to life are different. When viewed from the perspective of a possible life sentence, 15 years falls on the relatively light side, but when viewed from the perspective of a punishment range of 2 to 20 years, 15 years falls on the relatively harsh side.

In the abstract, we cannot imagine a scenario where the increased range benefited Karr. Nor can we conclude that the net result of applying the harsher range was a wash under the circumstances. By design, the increased punishment range was intended to be prejudicial. *See Jordan*, 258 S.W.3d at 293. The more likely impact was that the vastly greater punishment range harmed Karr.

Rather than assume that the trial court would have assessed the same punishment if it had applied the correct range of punishment, we conclude the better course is to ensure the integrity of the sentencing procedure. *See Grado*, 445 S.W.3d at 741. To do that, we must insist on a punishment assessed under the correct law. *See id.*

Thus, we sustain Karr's second issue and remand his case to the trial court to conduct a new punishment trial. *See Ex parte Gibauitch*, 688 S.W.2d 868, 873 (Tex. Crim. App. 1985); *Borrego v. State*, 558 S.W.2d 1, 1–2 (Tex. Crim. App. 1977); *Van Flowers v. State*, 629 S.W.3d 707, 715 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *State v. Rowan*, 927 S.W.2d 116, 118 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

## IV.  CONCLUSION

We overrule Karr's first issue. In conjunction with our sustaining Karr's second issue, we modify the trial court's judgment as follows:

- Under the heading "Offense for which Defendant Convicted," the current judgment reflects that Karr was convicted of "Sex Offender[']s Duty to Register w/Prev Conviction." We modify the judgment to reflect that Karr was convicted of "Sex Offender's Duty to Register."

- Under the heading "Degree of Offense," the current judgment reflects "Hybrid Felony." We modify the judgment to reflect that the offense was a "Third-degree felony."

- Under the heading "2nd Enhancement Paragraph," the judgment currently reflects "Waived." We modify the judgment to reflect "N/A."

- Under the heading "Punishment and Place of Confinement," the judgment currently reflects "15 years Institutional Division, TDCJ." We reverse that portion of the judgment and remand Karr's case to the trial court for a new trial on punishment.

/s/ Mike Wallach
Mike Wallach
Justice

Publish

Delivered: February 8, 2024